OTTO KELSEY vs. FREDERICK D. GREEN.

First Judicial District, Hartford, May Term, 1897. ANDREWS, C. J., TORRANCE, FENN, BALDWIN AND HAMERSLEY, JS.

The welfare of the minor is the paramount consideration in *habeas corpus* proceedings to determine to whom its custody shall be awarded, even in a controversy between parents; *a fortiori* when the respective claimants are merely guardians appointed by courts of different States.

The probate district in which the minor has his actual, stated dwelling-place, is one in which he "resides" within the meaning of that word as used in § 458 of the General Statutes, even if he may have a technical domicil in another State by reason of his father's residence there.

[Argued May 4th—decided June 15th, 1897.]

APPLICATION for a writ of *habeas corpus* brought to and tried by the *Hon. Frederick B. Hall*, a judge of the Superior Court; facts found and judgment rendered for the respondent, and appeal by the petitioner for alleged errors in the rulings of the judge. *No error.*

The writ commanded the defendant to produce the body of Clarence Ward, a minor about thirteen years old, together with the causes of his detention. The return was as follows:

"The respondent, in obedience to said writ, brings the said Clarence Ward into court, and says that he is in no manner, without law or right, confined, imprisoned, restrained, or deprived of his liberty, and further avers with reference thereto as follows: 1. The said Clarence Ward is the son of Ferdinand Ward, now of Geneseo, in the State of New York, and of Ella Ward, the wife of said Ferdinand, and the nephew of the respondent. 2. The said Ella Ward died at Stamford, Conn., on or about March 1st, 1890. 3. The said Ferdinand

Ward, at the time of the decease of said Ella Ward, and for some time prior thereto, was a convict confined in the penetentiary at Sing Sing, in the State of New York, having been convicted in the courts of said State of a felony, and lawfully sentenced to imprisonment in said prison. 4. From the time of the sentence of said Ward, as set forth in paragraph 3, until her death, the said Ella Ward and her said son, Clarence Ward, resided in Stamford in this State, having removed from New York to Stamford with the knowledge and approval of said Ferdinand Ward. 5. The said Ella Ward, at her decease, left a considerable estate, and a last will and testament, by virtue of the provisions of which a trust was created for the benefit of the said Clarence, the income of said estate, or so much thereof as might from time to time be found necessary, to be expended by the trustees for the maintenance and education of the said Clarence until he shall arrive at the age of twenty-one years, the principal to be paid to him when he shall have arrived at said age, or, in case of his decease prior thereto without issue, said income to be paid one half part to his said father, and the balance to other beneficiaries named in said will. 6. Said will was proved and approved at East Haddam, in the State of Connecticut, before the Court of Probate for said district, and was also proved and approved in the proper tribunal in the State of New York. 7. The trustees named in said will declined to accept said trust, and thereupon the The Franklin Trust Company, a corporation located in Brooklyn, New York, was duly appointed trustee under the provisions of said will, both in Connecticut and in New York, accepted said trust, duly qualified in both States, and is now in the discharge of its duties thereunder. 8. To all these proceedings the said Ferdinand Ward was duly made a party, and gave his consent and approval thereto. 9. Upon the decease of the said Ella Ward, the question presented itself as to the proper disposition to be made of the person of the said Clarence, as said The Franklin Trust Company under its charter had no power to act as guardian of the person of the said Clarence, his father being then confined in the state prison, and the nearest relatives on the side of the father

positively declining to assume any personal care of or custody of the said Clarence. 10. It was finally agreed between all the relations upon both sides, including the father, and with the concurrence of The Franklin Trust Company, that said Clarence should be placed under the care and custody of his uncle, the respondent, at Thompson in this State, and that the respondent, without legal action being taken in reference thereto, should assume and thereafter occupy the position of a guardian over the person of the said Clarence Ward. 11. In accordance with the arrangement aforesaid the said Clarence was forthwith removed from Stamford, Conn., where he was then residing, to the house of the respondent in said Thompson, and has continued to reside there until the present time. 12. The said Ward was released from state prison on or about 1892. After being so released the said Ward approved and ratified said arrangement with reference to the custody of Clarence. 13. Sometime after the release of the said Ward from prison he demanded of the respondent the custody of Clarence, but the respondent did not feel authorized to assume the responsibility of disregarding the terms of the arrangement hereinbefore mentioned, without the consent and approval of the other contracting parties thereto, and referred the said Ward to such other parties for such consent and approval. 14. The other parties interested in the welfare of the said Clarence, as aforesaid, declined to consent to the change in the child's status as contemplated by the said Ward. 15. The respondent, thereupon, suggested that the question as to the right of the said Ward to the custody and control of the said Clarence be referred to the adjudication of the proper court upon the application of the said Ward. 16. The said Ward refused to take any legal action in the matter, but did, on the 13th day of September, 1894, acting through his agents thereto by him employed, enter the State of Connecticut and the town of Thompson, forcibly, and without prior demand upon the respondent and contrary to the wishes of the said Clarence, did attempt to abduct the said Clarence and remove him from the custody and care of the respondent, and beyond the limits of this State, and of

the jurisdiction of its courts. 17. Thereupon, on the 8th day of October, 1894, after due hearing had, and upon legal motion thereof, the Court of Probate for the district of Thompson did appoint the respondent the legal guardian of the person of the said Clarence, which said appointment the respondent accepted, and is now in the discharge of his duties thereunder, the same having never been annulled or set aside. . . . 21. The said Clarence, ever since the date of his residence with the respondent, as hereinbefore set forth, has remained with the respondent of his own free will and accord, and has been supported, maintained and educated by the respondent under the arrangement hereinbefore stated, and the said Clarence still desires to remain with the respondent. 22. The respondent is the legal guardian of the said Clarence, and, as such, is entitled to his care and custody, and is desirous of maintaining, supporting, and educating him as aforesaid, and it is for the best interests of the said Clarence to remain in the care and custody of the respondent, and the petitioner is not the guardian and in no manner entitled to have the care and custody of the said Clarence."

To this return the plaintiff replied as follows: "*First.* Paragraphs 17 and 22 are denied; all the other paragraphs of the return are admitted. *Second.* And by way of further reply to said return, the petitioner says that the residence of said Clarence Ward was not at Thompson at the time of said Green's alleged appointment as his guardian, nor has it ever been at said Thompson or elsewhere in the State of Connecticut, but is now and always has been in the State of New York, and that the Court of Probate of Thompson had not jurisdiction to make the appointment alleged in paragraph 17 of said return. And the petitioner says that on the 1st day of July, 1895, the residence of said Clarence Ward was, and for a long time previous thereto had been, at Geneseo, Livingston County, in the State of New York, and within the jurisdiction of the Surrogate Court of said county, and that on that day said court, having jurisdiction therefor under the laws of the State of New York, duly appointed said petitioner to be the guardian of said Clarence Ward, which appoint-

ment has never been annulled, and is in full force." The defendant denied this reply.

The trial judge found that the defendant was lawfully appointed guardian of the person of said Clarence Ward on the 8th day of October, 1894, by the Court of Probate ror the district of Thompson in this State; that the plaintiff was appointed such guardian on the first day of July, 1895, by the Surrogate Court for the County of Livingston in the State of New York. The finding then proceeds: "6. It was admitted that at the time of the appointment of the respondent as such guardian, the said Ferdinand Ward was, and for a long time had been, a legal resident of the State of New York, and that at the time of the appointment of the petitioner, as aforesaid, the residence of said Ferdinand Ward was Geneseo, New York. 7. Excepting as above stated, no evidence was offered at said hearing by either of the parties to said proceeding. 8. From the facts set forth in said return, I find it to be for the best interest of said minor child that he remain in the care and custody of the respondent. 9. Upon said hearing counsel for the petitioner claimed as matters of law: That the appointment of the respondent as guardian as aforesaid was void, and that because the said Ferdinand Ward, at the time of said application and appointment of the respondent, was a legal resident of New York State as aforesaid, said Court of Probate of Thompson had no jurisdiction of the subject-matter of said application and appointment, and that the same was of no effect; and that because of said appointment of the petitioner by said Surrogate Court of New York State, as aforesaid, it was the duty of the court, upon the facts set forth in said return to said writ, to award the custody of said minor, Clarence Ward, to the petitioner."

The judge found the issue for the defendant, denied the writ, and remanded the said Clarence Ward to the care and custody of the defendant; and from that judgment the plaintiff appealed to this court.

*William C. Case* and *William S. Case*, for the appellant (petitioner).

By the use of the word *resides* in §§ 458—460 of the General Statutes, the legislature intended the *domicil* of the minor, and not his *mere residence*. *Salem* v. *Lyme*, 29 Conn. 74, 80, 81; *In re Conner's Estates*, 15 Pa. (County Court) 312; *Blumenthal* v. *Tannenholz*, 31 N. J. Eq. 194. If we are right in the construction of this statute, and the proper definition of the word " reside " therein used, the question then arises: Where was the domicil of Clarence Ward at the time of the appointment made by the Thompson Court of Probate? His domicil, his legal residence, was the domicil of his father, Ferdinand, " for the domicil of the unemancipated minor is always that of his father." 5 Amer. & Eng. Ency. of Law, 866, and cases there cited; *Lamar* v. *Micou*, 112 U. S. 452. A bare contract by the father with a third person that the latter shall have the custody of the former's child, is in the nature of a mere consent, and may be revoked by the father. He is therefore entitled, on *habeas corpus*, to have the child delivered over to him. 9 Amer. & Eng. Ency. of Law, 240, and cases there cited; *Johnson* v. *Terry*, 34 Conn. 263. If we are right in our claim so far, the appointment by the Thompson Probate Court was utterly void and of no effect. *Sears* v. *Terry*, 26 Conn. 273; *First National Bank* v. *Balcom*, 35 id. 359, and authorities there cited; *Culver's Appeal*, 48 id. 173. If it be true that Mr. Kelsey is the legal guardian of Clarence, he has, by virtue of his office the right to his custody, and it becomes his duty to enforce this right. The judge had no discretion in the matter of this application; but whether he had or not, his attempted exercise of it is reviewable here. *Trumbull* v. *O'Hara*, 68 Conn. 34; *Dennis* v. *Dennis*, ibid. 197; *Trustees, etc.*, v. *Christ Church*, ibid. 372; Wharton, Conflict of Laws (2d ed.), Chap. 6.

*Charles E. Perkins* and *Charles E. Searls*, for the appellee (respondent).

The best interest of the minor is always the paramount question in proceedings by writ of *habeas corpus*. Church on Habeas Corpus (ed. 1886), Chap. 31, §§ 438, 441, 442, 446,

447 ; 9 Amer. & Eng. Ency. of Law, 243 ; *Hussey* v. *Whitney*, 44 N. E. Rep. 640 ; *Nichols* v. *Giles*, 2 Root, 561 ; *Johnson* v. *Terry*, 34 Conn. 259. The Court of Probate in Thompson had jurisdiction, as the minor *resided* there within the meaning of the statute. The framers of the statute did not have in mind the domicil or legal home of the minor, but rather his residence or present actual place of abode. Even if we are wrong in our interpretation of the statute, the granting of the relief asked for by the petitioner is always a matter of discretion. Church on Habeas Corpus, § 443 ; 9 Amer. & Eng. Ency. of Law, 245. Courts are not bound to deliver the minor over to the custody of any particular person. Church on Habeas Corpus, § 445. " In awarding the custody of a child on *habeas corpus* the court will respect its feelings, its attachments, its preferences, and its probable contentment." 9 Amer. & Eng. Ency. of Law, 246. It is, to say the least, doubtful whether a guardian appointed in another State can bring a suit, as guardian, in the courts of this State. He is in the same position as an administrator. *Smith* v. *Madden*, 78 Fed. Rep. 833.

ANDREWS, C. J. Two errors are insisted on : (1) That the judge erred in holding that the question of the interest of the minor could affect the right of the plaintiff to the custody of his ward. (2) That the judge erred in overruling the claims of the plaintiff that the appointment of the defendant as guardian was void, for the reason that the Court of Probate in the district of Thompson had no jurisdiction to make the appointment.

Most of the argument which is made in behalf of the plaintiff seems to us to be misapplied. The contention here is not between the father on the one hand and a stranger as guardian on the other, but between two guardians; one appointed by a court at the place where the minor has had his actual dwelling-place for six or eight years, and the other by a court at the place where it is said the technical domicil of the minor's father is. This writ, if granted, would not put the minor into the care and custody of his father, but

into the hands of an utter stranger in fact as well as in
blood; who, although a fit man to be a guardian, can have no
kindness or affection for the minor, nor for whom can the
minor have any affection or good will. *Prima facie*, it is
true, a father has the legal right to the custody of his minor
child; but he has no absolute right which he can at his own
will transmit to another, to the detriment of the child. The
plaintiff was appointed guardian of the person of Clarence
Ward, by a court in the State of New York on the applica-
tion, as the record shows, of Ferdinand Ward, the father of
Clarence. By that appointment, made on that application,
it is very likely that the father has excluded himself from the
right to claim the custody of his son. It is certain that the
appointment of the plaintiff made on that application gains
therefrom no added merit or force. The stress of the argu-
ment made here, that the parental relation ought to control,
has nothing to rest upon.

But were it otherwise, and the case was between the father
and a guardian, we think the court did not err in considering
the interest of the minor in determining into whose hands he
should be placed. " While it is the strict legal right of the
parents and those standing *in loco parentis* to have the cus-
tody of their infant children as against strangers, a court will
not, on *habeas corpus*, regard this right as controlling, when
to do so would imperil the personal safety, the morals, health
or happiness of the child in controversy. The right of the
father or mother to the custody of their minor children is not
an absolute right to be accorded to them under all circum-
stances, for it may be denied to either of them if it appears
to the court that the parent, otherwise entitled to the right,
'is unfit for the trust.' And in contests between parents and
third persons as to the custody by such parents, the opinion
is now almost universal that neither of the parties has any
right that can be allowed to militate against the welfare of
the infant. The paramount consideration is, what is really
demanded by its best interests. And the rule is ordinarily
the same in contentions between parents for the possession
of children. The court is not bound to award the custody

to either contesting party in such controversies, but may, subject to the welfare and best interests of the child, award it to a third party. In contentions of this kind the child has the right to the protection of the court against such misfortunes of its parents, or the influences of such gross and immoral practices as will seriously endanger its life, health, morals or personal safety. But what measure of wickedness or profligacy on the part of the parent will be sufficient to warrant the court to deprive the parent of his natural right to the minor child, must necessarily depend upon the facts and circumstances of each particular case." Church on Habeas Corpus, § 440. Authorities to support the rule thus expressed may be almost indefinitely cited. Thus in *Richards v. Collins*, 45 N. J. Eq. 283, 287, it is said : " In resolving the general question what will best subserve the interest and happiness of the child, its own wish and choice may be consulted and given weight, if it be of an age and capacity to form a rational judgment. There is no fixed age which capacitates such choice. It depends upon the extent of the mental development. . . The wishes of children of sufficient capacity to form them are given especial consideration, where the parents have for a length of time voluntarily allowed their children to live in the family of others, and thus form home associations and ties of affection for those having their care and nurture, and when it would mar the happiness of the children to sever such ties. The relation of parent and child is regarded as not fully characterized by the relative duties of service and support. Nature's provision of mutual affection commonly exists as the incentive to parental and filial duty and the bond of family union. It is the instinct of childhood to attach itself and cling to those who perform towards it the parental office ; and they become endeared to it by ministering to its dependence. A parent, by transplanting his offspring into another family and surrendering all care of it for so long a time that its interests and affections all attach to the adopted home, may thereby seriously impair his right to have back its custody by judicial decree. In a controversy over its possession, its welfare will be the paramount

consideration in controlling the discretion of the court. The strict right of the parent will be passed by, if a judgment in observance of such right would substitute a worse for a better custodian."

In the matter of *Jeremiah O'Neal*, 3 Amer. Law Review, 578, 579, JUDGE HOAR gave this opinion: " Suppose by a pure misfortune, as insanity, or being cast away, . . . a father has left his child destitute and dependent on charity; does this give the child the right to form such new relations as to take from the father the right to the custody of the child? Upon the best reflection, I am satisfied that it does. When the father, by misfortune, is compelled to leave the child utterly helpless, the child ought to be considered as emancipated by the father. If by misfortune, the child has made new relations in life, so deep and strong as to change its whole nature and character, the father has no right to reclaim it. I am satisfied that this is a sound proposition. The child is not the father's property. It is a human being, and has rights of its own. The father has a right to the custody of his child, because, from general experience, the natural and trained affections of the child attach to the father and those of the father to the child. If the father has left the child at an age too early for it to remember him, and it is placed in circumstances so that it must perish unless cared for, and other persons have expended money and become attached to the child, and the child has formed such associations as cannot be severed without injury to it, then the father has no legal right to sunder those ties. It is within the judicial duty of the court to determine that the assent of the father has been given to the arrangement, which cannot be terminated without injury to the child. This principle would apply under the same circumstances if the father became insane. A human being cannot be treated like a piece of property."

In *State ex rel. Lynch* v. *Bratton*, 15 Amer. Law Register, 359, the court uses this language: " The father's right (to the custody of his infant child) is not absolute or unqualified. He may relinquish or forfeit it by contract, by his bad con-

duct or by his misfortune in being unable to give it proper care and support. Where a father has, through his fault or misfortune, lost or forfeited his right, and subsequently, by reformation or otherwise, reinstates himself in a position to properly care for and maintain his child, his right does not necessarily revive, but a court upon *habeas corpus* will exercise a sound discretion in view of all the circumstances with reference to the welfare of the child itself."

On the hearing of a *habeas corpus* relative to the possession of a child, the question is one of discretion, and the further question whether the father is the proper person to have the care of it, is legitimate. *Johnson* v. *Terry*, 34 Conn. 259, 262; *Chapsky* v. *Wood*, 26 Kan. 650; *Mercein* v. *The People*, 25 Wend. 64; *Verser* v. *Ford*, 37 Ark. 27; 9 Amer. & Eng. Ency. of Law, 243; *Prime* v. *Foote*, 63 N. H. 52; *In re Goldsworthy*, L. R. 2 Q. B. Div. 75.

The Court of Probate in Thompson has jurisdiction to appoint a guardian to Clarence Ward. His actual, stated residence was in that district. Sections 458 and 459 of the General Statutes use the word "resides" in this sense, rather than in the sense of strict, technical domicil. *Denslow* v. *Gunn*, 67 Conn. 361. In other sections of our statutes generally, the word "reside" is used in a sense which includes all who are the actual, stated dwellers in any given place, even though they may have a technical domicil elsewhere. *Yale* v. *West Middle School District*, 59 Conn. 489; *Conn. Hospital for Insane* v. *Brookfield*, 69 id. 1.

There is no error.

In this opinion the other judges concurred.