IVER O. MOSSBERG ET AL., EXECUTORS (ESTATE OF OSCAR F. MOSSBERG) *v.* CHARLES J. McLAUGHLIN.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, JS.

Argued June 7—decided July 21, 1939.

*Charles M. Lyman,* for the plaintiffs.

*Louis Weinstein,* assistant inheritance tax attorney, with whom was *Frederic W. Dauch,* deputy tax commissioner, and, on the brief, *Francis A. Pallotti,* attorney general, for the defendant.

HINMAN, J. Section 285d of the 1937 Supplement to the General Statutes makes liable to the succession and transfer taxes provided for by Chapter 77 of the General Statutes of 1930 transfers made ". . . (c) in contemplation of the death of the transferor, and any

transfer of property, . . . either by a direct conveyance or by conveyances through a third party, made and completed within one year next prior to the date of death of the transferor, shall, unless shown to the contrary, be construed prima facie to have been made in contemplation of death; (d) by gift or grant intended to take effect in possession or enjoyment at or after the death of the transferor. Such a transfer as last mentioned shall include, among other things, a transfer under which the decedent retained for his life, or for any period not ascertainable without reference to his death, or for a period of such duration as to evidence an intention that he should retain for his life (1) the possession or enjoyment of, or the right to the income from the property, or (2) the right, either alone or in conjunction with any person or persons, to designate the person or persons who shall possess or enjoy the property or the income therefrom." It is also provided (f) "if any transfer, specified in subdivisions (c), (d) and (e) of this section should be made for a valuable consideration, so much thereof as is the equivalent in money value of the money value of the consideration received by the transferor shall not be taxable, but the remaining portion shall be taxable."

Upon application of the state tax commissioner for a finding and decree as to the taxability under § 285d of certain transfers (hereinafter described) made by Oscar F. Mossberg prior to his death, the Court of Probate found that the transfers were made in contemplation of death and were subject to tax. From this the present plaintiffs, executors of Mr. Mossberg's will, appealed to the Superior Court assigning error in so finding, and in failing to find the value of consideration given for the transfers and that they were free of tax to the extent of such consideration. On that appeal the trial court found that Mossberg "knew

he was seriously ill and when he made the transfers
. . . the thought of his death was the impelling mo-
tive"; that "as to the transfers in trust, it was deced-
ent's intention that possession or enjoyment thereof
was to be delayed until at or after his death"; and that
"the motivating cause of the transfers was a desire to
escape death taxes." The conclusions reached were
that all the transfers were within subdivision (c) and
the transfers in trust also within subdivision (d) of
§ 285d but that the Court of Probate failed to de-
termine the question of consideration for the transfers
and that the Superior Court "had no original jurisdic-
tion" to determine it, and the court sustained the
appeal "on the ground that it does not appear the
transfers are subject to the imposition of a tax . . .
under . . . Section 285d . . . because the Court of Pro-
bate failed to find the value of the consideration given
for said transfers." From this judgment both parties
appealed to this court. The plaintiffs assign error in
making the findings of fact above quoted and as to the
conclusions that the transfers were within § 285d, and
both parties assign error in the failure of the trial court
to determine the question of consideration.

We consider first the findings attacked by the plain-
tiffs supporting the conclusion that the transfers were
made in contemplation of death. The question whether
or not a gift or transfer has been so made, within
the meaning of a succession or transfer tax statute,
is one of fact, the answer to which depends largely
upon the facts in the individual case. Ross, Inherit-
ance Taxation, § 119. Therefore no general rule of law
can be formulated that will determine it, but there are
some rules which are of assistance. The interpretation
of the phrase "in contemplation of death" in this con-
nection has been involved in many cases. See *Schwab*
v. *Doyle* (C. C. A.) 269 Fed. 321, 328; *In re Thomp-*

*son's Estate,* 72 Utah 17, 50, 269 Pac. 103; Notes, 7 A. L. R. 1028, 41 A. L. R. 989, 75 A. L. R. 544. It is generally recognized that it does not refer to the general expectation of eventual death which is entertained by all persons. On the other hand, with inconsiderable exceptions, the meaning has not been limited to cases of such anticipation of death as immediately impending as is characteristic of gifts causa mortis. The true rule lies between these two extremes and while it has been variously stated there has been practical agreement upon some fundamental considerations, and the tendency of recent decisions has been to somewhat broaden the definitions. Note, 75 A. L. R. 545. The opinion by Chief Justice Hughes in *United States* v. *Wells* (1931) 283 U. S. 102, 51 Sup. Ct. 446, has been widely accepted and quoted from in state as well as federal courts and has tended to stabilize statement of the underlying principles and interpretation of the term. It is there said (p. 116): "Transfers in contemplation of death are included within the same category, for the purpose of taxation, with transfers intended to take effect at or after the death of the transferor. The dominant purpose is to reach substitutes for testamentary dispositions and thus prevent the evasion of the estate tax. . . . As the transfer may otherwise have all the indicia of a valid gift *inter vivos,* the differentiating factor must be found in the transferor's motive. Death must be 'contemplated,' that is, the motive which induces the transfer must be of the sort which leads to testamentary disposition. . . . [p. 117] As the test, despite varying circumstances, is always to be found in motive, it cannot be said that the determinative motive is lacking merely because of the absence of consciousness that death is imminent. It is the contemplation of death, not necessarily the contemplation of imminent death, to which the statute

refers. . . . Old age [p. 118] may give premonitions and promptings independent of mortal disease. . . . The words 'in contemplation of death' mean that the thought of death is the impelling cause of the transfer, and while the belief in the imminence of death may afford convincing evidence, the statute is not to be limited, and its purpose thwarted, by a rule of construction which in place of contemplation of death makes the final criterion to be an apprehension that death is 'near at hand.' . . . [p. 119] It is sufficient if contemplation of death be the inducing cause of the transfer whether or not death is believed to be near." See also *Becker* v. *St. Louis Trust Co.,* 296 U. S. 48, 51, 56 Sup. Ct. 78; *Land Title & Trust Co.* v. *McCaughn,* 7 Fed. Supp. 742, 744.

"What prompts the making of such a conveyance rests upon the facts and circumstances surrounding each particular case. No general rule can be formulated which will fit all cases but each case must be examined and determined on its own facts and circumstances, in the light of the experience which the courts have gained in dealing with such matters. For this purpose the donor's age [and] physical condition . . . as well as the length of time he survives the making of the transfers, are all proper matters to be considered in determining whether the act was done in contemplation of death." *People* v. *Danks,* 289 Ill. 542, 548, 124 N. E. 652, 7 A. L. R. 1023; *Will of Harnischfeger,* 208 Wis. 317, 328, 243 N. W. 453; *Will of Daniels,* 225 Wis. 502, 510, 274 N. W. 453; Kidder, State Inheritance Tax and Taxability of Trusts, p. 131. "The law searches out the reality and is not halted or controlled by the form. . . . The measure determining the liability or freedom from liability to the tax is the nature, the essence, the effect of the transfer." *Matter of Orvis,* 223 N. Y. 1, 8, 119 N. E. 88.

An additional indication that taxability is not limited to transfers made under apprehension of immediately impending death is afforded by the provision in our statute, and in substance common in such statutes, that transfers made within one year next prior to the death of the transferor shall, unless shown to the contrary, be construed prima facie to have been made in contemplation of death. We here note, in passing, that, as the plaintiffs claim, while this provision avails to create a prima facie case in the absence of evidence to the contrary, it has no probative weight when substantial countervailing evidence is introduced, although the circumstance which brought the transfer within it is to be considered with the other evidence in the case as the basis of any proper inferences. *O'Dèa* v. *Amodeo*, 118 Conn. 58, 64, 170 Atl. 486; *Leitzes* v. *F. L. Caulkins Auto Co.*, 123 Conn. 459, 462, 196 Atl. 145; *Will of Harnischfeger*, supra, 327. There are, of course, situations and circumstances which may signify that a transfer is associated with life rather than in contemplation of death, such as a desire of the transferor to be relieved of material responsibilities or to afford others experience in bearing them, to relieve the necessities of children or other appropriate objects of the donor's bounty or to have them independently established with competencies of their own instead of awaiting the occurrence of his death. *United States* v. *Wells*, supra, 118; *Commissioner of Internal Revenue* v. *Colorado National Bank* (C. C. A.) 95 Fed. (2d) 160, 163.

In 1919 Oscar F. Mossberg, after having been long employed in firearms factories, where he had been active in the design of small firearms, established a small manufactory of firearms in New Haven, being joined therein by his two sons, Iver O. Mossberg and Harold F. Mossberg. The business began with the

employment of only four or five workmen in addition to the three Mossbergs but grew steadily until now two to three hundred persons are employed. For several years prior to decedent's death he had received a salary of $20,000 per year; salaries in substantially similar amount have been paid to the sons, and the average net earnings of the corporation for the five years, 1933 to 1937, were approximately $37,000 per year. Both of the sons were in comfortable financial circumstances without need of assistance from their father. Until about two years before his death the decedent had customarily spent long hours at work, with little leisure time, but at that time he began to reduce the time spent at business and take substantially more leisure. In September, 1936, he consulted a physician for what the latter described in evidence as "a general discomfort and failure due to high blood pressure and heart disease." The doctor told him of the high blood pressure but not of the heart disease. He was under treatment periodically from that time on. His blood pressure and general condition improved and he was able to and did continue to work until the following May (1937) "when he began to go down hill very rapidly," "he felt weak and lost a good deal of weight" and had "a good deal of abdominal discomfort and constipation." In that month his physician felt a mass in his lower abdomen and he went to a hospital where X-rays were taken which showed an obstruction, and he was operated on June 8th. The operation revealed that he had a malignant cancerous growth which could not be removed and a tube was inserted above it through which, until his death, the waste matter was discharged instead of being eliminated in the natural way. He left the hospital about June 25th and thereafter was at home, up and around the house and out of doors, until December 11th, when

he took a distinct turn for the worse, failed rapidly and died on December 27th. He was then seventy years of age. His doctor did not tell him, at the time of the operation or afterward, that he was suffering from cancer but did inform the family of that fact. He was above the average in intelligence and was mentally alert during the occurrence of the events here under consideration.

For some time prior to his father's death Iver O. Mossberg acted as his agent in fact in all business and family matters. In August, 1937, Iver consulted counsel, with the accountant who had been handling the tax work for the Mossbergs for some years, and discussed, the finding states, "as to the best disposal of the substantial property then accumulated by the decedent, having in mind the disposal which would involve the greatest economy from the point of view of federal and state taxation." Pursuant to these discussions counsel prepared drafts of a contract, and three trust instruments which eventually, on October 31st, were executed by the decedent, at his home, together with a will giving all of his property to his two sons and his daughter Inez Mossberg Sawin. By the contract Mr. Mossberg gave to each of his three children $25,000 in cash and an option to each to purchase, within twenty years, not exceeding one-third of his holdings of stock of both classes in the corporation which owned the manufacturing plant and business, each of the children agreed to pay $5000 to Mr. Mossberg's wife each year during her life, and Mrs. Mossberg released to her husband any claim against him for support during their joint lives and any claim against or upon his estate after his death. In each of the trust instruments Mr. Mossberg transferred one hundred and fifty shares of the common stock and eighty-four shares of the preferred stock of the cor-

poration, subject to the options provided for in the contract, to a trustee, in one to Iver O. Mossberg for his brother Harold, in another to him for his sister, and in the third to Harold F. Mossberg for his brother Iver, to pay to the beneficiary so much of the income as the trustee in his discretion might see fit, accumulate any income not so paid, and at the expiration of five years pay over and deliver the principal to the beneficiary. Mr. Mossberg reserved "to himself during his lifetime" the right to change the trustee, or the beneficiary or make any other change "provided, however, that no such change shall operate to revest in [him] any beneficial interest in said trust property." The $75,000 mentioned in the contract was paid to the three children at the time of the execution of the contract and the shares of stock were transferred to the trustees named in the trust instruments. Mr. Mossberg's wife renounced, after his death, any claim to a statutory share in his estate. The total inventory value of the estate of the decedent, after those payments and transfers, was $23,794.61.

The foregoing is derived from findings of subordinate facts which are unchallenged or are supported by uncontradicted evidence and inferences legitimately to be drawn therefrom. While it appears that decedent was not told the exact nature of his afflictions it is most improbable if not inconceivable that, intelligent and alert mentally as he is found to have been, he was unaware of the seriousness of his condition or could have failed to realize and anticipate the probable consequences. Further findings which are claimed to militate against thought of death as the incentive, including that in 1934 the decedent had given his daughter $5000 and in 1935 gave $5000 to each of his children and several hundred dollars to relatives abroad, and that in 1936 he was interested in a prospec-

tive plan which would insure continued control, by the family, of the manufacturing establishment, are insufficient, at most, to preclude the trial court from finding as it did as a question of fact. The finding of facts as it stands, considered in the light of the general principles above adverted to, is adequate to sustain a conclusion that the transfers were made "in contemplation of death" within subdivision (c) of § 285d. While a desire to escape death taxes, which is found to have motivated the transfers, might not, of itself, be sufficient to bring them within the statute, it is of significance as an indication that the thought of death was an incentive to making them. *Farmers' Loan & Trust Co.* v. *Bowers,* 98 Fed. (2d) 794, 799.

The validity which we accord to the conclusion that all of the transfers were taxable under subdivision (c) renders superfluous consideration of whether the trial court was correct in concluding that the transfers in trust come also within subdivision (d), or, as the plaintiffs contend, the direction of a distribution of the principal at the expiration of five years from date so overbears the succeeding inconsistent reservation by the transferor of the right "during his lifetime" to change the beneficiary as to take them out of the purview of that subdivision.

Although the plaintiffs state in their draft-finding and the defendant concedes in his brief that the matter of consideration for the contract was a subject of evidence and argument before the Court of Probate, that court made no determination as to it in its decree, unless, as is suggested, it might be inferred from the unconditional finding of taxability that no applicable consideration was found. The Superior Court held that such determination was essential before it could be an issue on the appeal and that it had no jurisdiction to decide the question. In this the trial court was

mistaken. The issue in the Court of Probate, and in the Superior Court in a trial de novo upon the appeal, was the broad one of taxability of the transfers. Any element working exoneration from tax, either partial or total, as the case might be, would be but subsidiary to and comprehended within the general issue of taxability. Therefore, it was open to inquiry and determination upon the appeal, or the trial court, in its discretion, might have remanded the matter to the Court of Probate for explicit decision by it. *Reiley* v. *Healey*, 124 Conn. 216, 221, 198 Atl. 570. To determine it on the appeal would not be a decision by the Superior Court of an issue which had not been involved in the proceedings before the Court of Probate or be the exercise, by the Superior Court, of a discretion vested solely in the Court of Probate as in *Wildman's Appeal*, 111 Conn. 683, 151 Atl. 265, and *Reiley* v. *Healey*, 122 Conn. 64, 79, 187 Atl. 661.

There is error only in failure to decide the question of consideration; the case is remanded to the Superior Court with direction to determine as to the existence of consideration received by the transferor so as to be available to affect the amount of tax and, if any, its value and application, and in all other respects to render judgment in accordance with this opinion.

In this opinion the other judges concurred.