AGNES ROGERS *v.* MARGARET KINNIE ET AL.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, JS.

Argued June 10—decided July 16, 1947

*Bernard S. Peck,* with whom, on the brief, were *David Goldstein* and *Alvin W. Peck,* for the appellant (plaintiff).

*Joseph J. Devine,* for the appellees (defendants).

ELLS, J.   The plaintiff, a woman about seventy years of age, brought this action to compel three of her four children to contribute reasonable sums for her support, as provided by General Statutes, § 1717.   The trial court entered judgment for the defendants and the plaintiff has appealed.

To bring the statute into operation it must be shown (1) that the plaintiff is poor and unable to support herself; (2) that the defendants are "able to provide"; and (3) that they have neglected to do so.   *Tulin* v. *Tulin,* 124 Conn. 518, 522, 200 A. 819. The basis of the trial court's decision was that, although the plaintiff was, at the time of the trial, poor and unable to support herself within the meaning of the statute, and the defendants were able to support her, she had failed to sustain her burden of proving that the defendants, at the time of the commencement of the action, had neglected to provide for her support.   We state only such facts as are necessary to our conclusion.

Prior to the summer of 1943, the plaintiff had lived in the home of each of the defendants for various periods of time but was made to feel unwelcome and unwanted.   During that summer she secured employment in the home of a married couple and their two young children.   Her duties were to care for the children when they were not at school and while the parents were at work.   She assisted in the housework and cooked some of the meals, but this work

was wholly voluntary and was done because she wished to do it. As compensation, she received her board and lodging and $10 per week. She visited the homes of the defendants upon several occasions but did not want them to know where she was staying and did not tell them. However, the fourth child, Joseph, who is not a defendant, had positive knowledge of his mother's exact place of residence at all times. He was employed at the same place as the defendant Michael and was in contact with him on many occasions.

The defendant Margaret Kinnie had in her possession policies on the plaintiff's life, aggregating about $600, in which the right was reserved to the plaintiff to change the beneficiary. In the early part of March, 1946, she went to see Margaret and told her that she was unable, and was not going, to work any longer, and she asked Margaret to turn over the policies to her as she wanted to use the money to take care of herself. Margaret refused to surrender them and still retains them in her possession. On March 14, 1946, the plaintiff's attorney made written demand on each of the defendants for "contributions from you for her support as required by the Connecticut law," and advised them that legal proceedings would be brought against them if they failed to make arrangements to provide for her support. None of the defendants thereafter got in touch with either the plaintiff or her attorney. The present action was instituted on March 28, 1946.

For the purposes of trial the plaintiff was examined by a physician on November 19, 1946, and was found to be suffering from high blood pressure, arthritis, generalized arteriosclerosis and hypertensive heart disease. She had headaches, dizziness

and generalized pain and was in some danger of having a cerebral hemorrhage. It is unnecessary to go into further details as to her condition at the time of trial in view of the court's first conclusion: "The plaintiff is, and at the time of trial was, poor and unable to support herself within the meaning of Section 1717 of the General Statutes."

The trial court based its decision upon the ground that there had been no "neglect" of the children to support the plaintiff. We can properly turn to the memorandum of decision to ascertain the ground upon which that conclusion was reached and to test it. Conn. App. Proc., p. 120. We find that the court reached its conclusion upon the ground that until the plaintiff was examined on the eve of trial her physical condition was not known; that the children would not have ascertained the facts disclosed by the examination had they made inquiry before the trial; and that they were not neglectful unless in some way notice of these physical infirmities had been brought home to them.

The plaintiff might have felt and been too feeble to carry on the work on which she relied for her support without knowing the details of the physical conditions which would be disclosed by a medical examination. It is the result, not the cause, of her physical condition which is the controlling consideration. After the children received notice that she was looking to them for support, had they gone to her counsel, as he invited them to do, or to her to ascertain the facts, they might have learned that she was not reasonably able any longer to carry on the work. The court found that the plaintiff, because of her physical condition, at the time of trial should not have been performing even the compara-

tively light duties required of her in her employment, and that, despite her age and physical condition, she continued to work because she had no other source of income. Even though the causes which produced her feebleness were not known at the commencement of the trial and although the children could not have ascertained them before then, they are not to be absolved from liability if a reasonable inquiry on their part would have disclosed to them that she was too feeble to support herself any longer by working.

We disagree also with the proposition that the defendants are not guilty of "culpable" neglect unless full knowledge of her physical condition was brought home to them. We have hereinbefore described the notice to Margaret and the written demands upon all the defendants. While they did not know where the mother was, the court has found that they could easily have found out but made no attempt to do so. Instead they waited until the action was brought and then resorted to the defense that they had not been guilty of culpable neglect. It might be found that, having received the notice, they had the duty of making inquiries as to the condition of their mother. It is significant that the court found that "the attitude of the defendants toward the plaintiff was crude and distasteful, and they manifested very little filial affection toward her."

The defendants rely on *Tulin* v. *Tulin*, supra, and *Lathrop* v. *Lathrop*, 78 Conn. 650, 652, 63 A. 514. Both cases presented facts which were entirely different from those of the present one. Payments for support had been made in both cases; the plaintiffs claimed that the amounts were inadequate, but

brought their actions without giving any previous notice of that claim to the defendants. We held that there was no "neglect" within the meaning of the statute. Those defendants had not acted unfairly or unreasonably; here, it might be found that these defendants, after having received the notice that the mother needed support under the statute, did not act fairly and reasonably in not making any inquiries to ascertain her condition. *Lathrop* v. *Lathrop,* supra.

The fact that their mother continued in her employment is stressed by the defendants. They received notice, and did nothing; she had to live, and, if her employers were willing to retain her, it might be found that the natural and only feasible course for her to adopt was to struggle on as best she could under her physical limitations. In *Koniak* v. *Koniak,* 123 Conn. 338, 342, 195 A. 189, we held that the test of the right of a person to support under § 1717 is the same as that which would be applied in case a claim was made on a town for pauper support. One is not entitled to town support as a pauper unless he has no relations obliged by law to support him. General Statutes § 1693. In seeking first a court order for such support a person is acting properly and reasonably. Where his physical condition is such that he cannot in reason be expected to carry on a gainful occupation, particularly if by so doing he is likely to shorten his life span, he is not precluded from seeking support from his relatives if, pending the outcome of a demand on them, he continues to work as best he can. To say to him that he must quit work before he can seek support from them, and must subsist as best he can through weeks and months until the question is settled, would be

to interpret the statute too rigidly, harshly and inhumanely to suit these times. See *Old Saybrook* v. *Milford,* 76 Conn. 152, 155, 56 A. 496. Certainly it would not accord with the liberal construction of the law in question to which we stand committed. *Bradley* v. *Fenn,* 103 Conn. 1, 4, 130 A. 126.

It is true that the plaintiff cannot recover unless she proves that she was poor and unable to support herself at the commencement of the action. *Cunningham* v. *Cunningham,* 75 Conn. 64, 66, 52 A. 318. The court did not find whether or not that was so, although in its memorandum of decision it twice suggests the possibility that medical evidence might be sufficient to prove her inability to work at that time. We cannot add to the finding, as the plaintiff asks us to do, the fact that she was unable to support herself when the action was begun, but that is a very different proposition from having a finding by the trial court on that issue upon a new trial. The court did not need to make a finding as to it in view of the point on which it decided the case, a point which we are unable to sustain. Under *Cunningham* v. *Cunningham,* supra, 67, the plaintiff's condition at the time of trial is relevant evidence to show her condition when the action was brought. See *Dale's Appeal,* 57 Conn. 127, 143, 17 A. 757.

The court decided the case on an erroneous basis, and there must be a new trial, at which the application of the cases cited immediately above should receive consideration.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.