MARY E. BAILEY *v.* HARRY MARS ET AL.

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

594

Argued February 5—decided March 18, 1952

*Samuel H. Aron,* with whom was *Nathan Aaron,* for the appellants (defendants).

*Joseph J. Fauliso,* for the appellee (plaintiff).

*Ernest H. Halstedt,* assistant attorney general, with whom, on the brief, was *George C. Conway,* attorney general, as amicus curiae.

BROWN, C. J. This is an appeal by the defendants from a judgment of the Superior Court in Hartford County setting aside an interlocutory decree of the Probate Court for the district of Hartford. The decree approved a valid written agreement between the defendants and the plaintiff whereby the latter as natural parent gave to the former her minor illegitimate child in adoption. The question for determination is whether the plaintiff, who, pursuant to § 6866 of the General Statutes, had voluntarily joined in the agreement, had the legal right, at any time prior to a decree of adoption entered upon an application under § 6867, to withdraw her consent and thereby deprive the Probate Court of jurisdiction.

These pertinent facts found by the trial court are undisputed: In January, 1949, the plaintiff, an unmarried woman residing in Hartford, became concerned and emotionally upset upon learning that she was pregnant and that there was no possibility of assistance from the father upon the birth of the child. Pursuant to the suggestion and persuasion of the physician attending her, she later conferred with an attorney representing the defendants concerning the giving of

the child to them in adoption. Shortly thereafter, on June 15, 1949, she gave birth to a daughter at the Hartford Hospital. Nine days later, at the office of the attorney, after he had fully explained the nature of the documents, she signed an agreement of adoption, a waiver of notice of the hearing thereon and a consent to adoption of the child applicable to the defendants as foster parents. Her consent to the adoption by the defendants so expressed was freely given and was not void because of any fraud or duress. On June 27, 1949, the instruments were filed in the Probate Court. On July 15, 1949, the plaintiff told a state welfare investigator, unequivocally, that she did not want to give up her child and that she was withdrawing her consent. Formal written notice to this effect was filed with the Probate Court on September 22, 1949, and when the adoption hearing was held on March 24, 1950, the plaintiff and her counsel objected to the approval of the application. On May 5, 1950, the Probate Court entered the interlocutory decree approving the adoption. The plaintiff duly appealed to the Superior Court.

On June 26, 1949, the defendants, with the plaintiff's approval and consent, took the baby from the hospital and have cared for her ever since. They have provided a suitable home for her and are in a position to give her a proper upbringing in a normal home atmosphere. Besides the probate expenses, they paid bills totaling $650 for the doctor, the attorney and the hospital. They have paid nothing to the plaintiff. The court concluded (1) that although the plaintiff's original consent to the adoption was valid and freely given she had the legal right to withdraw it at any time before the Probate Court made a decree of adoption, and (2) that when she withdrew her consent, before any hearing or decree by the Probate Court, that court was

thereafter without power or jurisdiction to proceed further with the matter and the decree later rendered by it was invalid and void.

"Adoption is the establishment of the legal relationship of parent and child between persons not so related by nature." 2 Locke & Kohn, Conn. Probate Practice, § 685. It results in a status that was unknown to the common law. *Woodward's Appeal*, 81 Conn. 152, 165, 70 A. 453. "Being of purely statutory origin, a legal adoption results if the statutory procedure is followed, but fails if any essential requirement of the statute is not complied with." *Goshkarian's Appeal*, 110 Conn. 463, 465, 148 A. 379.

The statutes directly involved in this appeal are §§ 6866 and 6867. Section 6866 provides that, among other persons specified, the mother of any child born out of wedlock may, by written agreement, subject to the approval of the Court of Probate as provided, give in adoption to any person any minor child in her charge. Section 6867, so far as it is material in this case, prescribes the following procedure: Each adoption matter must be instituted by filing an application, together with the written agreement of adoption, in duplicate in the Probate Court for the district where the natural parent resides. The application must be signed by at least one of the parties to the agreement, who may waive notice of any hearing thereon. One of the duplicates must be sent to the commissioner of welfare for an investigation and report within ninety days. This report "shall indicate the physical and mental status of the child and shall contain such facts as may be relevant to determine whether the proposed adoption will be for the welfare of the child, including the physical, mental, social and financial condition of the parties to the agreement." After receipt of the report, the court must set a day for a hearing upon the agreement and

give reasonable notice thereof. At this hearing it may deny the application, order a further investigation, enter an interlocutory decree approving the adoption until a final decree is rendered upon a hearing not less than twelve nor more than thirteen months after the filing of the application, or enter a final decree of approval. No approval can be decreed unless the court is satisfied that "such adoption is for the best interest of the child." So long as the interlocutory decree is in effect, the child is deemed for all purposes to have been adopted.

Section 6867 contains no express provision permitting one who has joined in an agreement to give her child in adoption to withdraw her consent after the filing of the application in the Probate Court. Whether such a right of withdrawal exists by implication depends upon the interpretation and construction properly to be accorded the statute. The question for the court "is never what did the legislature actually intend . . . but what intention has it expressed." *Lee Bros. Furniture Co.* v. *Cram,* 63 Conn. 433, 438, 28 A. 540; *Finoia* v. *Winchester Repeating Arms Co.,* 130 Conn. 381, 385, 34 A. 2d 636; *Connecticut Light & Power Co.* v. *Walsh,* 134 Conn. 295, 301, 57 A. 2d 128; *Mad River Co.* v. *Wolcott,* 137 Conn. 680, 686, 81 A. 2d 119. The court may not, by construction, supply omissions in a statute or add exceptions or qualifications, merely because it opines that good reason exists for so doing. *State ex rel. Heimov* v. *Thomson,* 131 Conn. 8, 12, 37 A. 2d 689. This is especially so where it appears that the omission was intentional. *State* v. *Nelson,* 126 Conn. 412, 416, 11 A. 2d 856. In such a situation, the remedy lies not with the court but with the General Assembly. *Davis* v. *Margolis,* 108 Conn. 645, 649, 144 A. 665.

The statutory provisions prescribe an adoption procedure which, though simple, is stated with precision.

After the parties have joined in the written adoption agreement, the proceeding is "instituted" by filing this in the Probate Court together with an application for the court's approval of the adoption. The court is then required to ascertain, by the investigation prescribed, the facts "relevant to determine whether the proposed adoption will be for the welfare of the child." At the hearing thereafter held, if the court is satisfied that the adoption "will be for the best interest of the child," it may enter an interlocutory decree of approval subject to final determination later, or, "if it is satisfied that such adoption is for the best interest of the child," it may enter a final decree approving the adoption. The thrice-repeated reference in the words quoted to the welfare or best interest of the child, particularly in the absence of any mention of a similar nature with relation to either of the parties to the adoption agreement, indicates very clearly that the primary purpose of the legislature as expressed in the statute is to insure the welfare of the child. This finds confirmation in the history of this legislation.

Under the original statute, enacted in 1864, approval of an adoption agreement by the Probate Court was made dependent upon its finding that this would "be for the welfare" of the child. Public Acts, 1864, c. 85, § 2. Similar phraseology has appeared in every subsequent revision of the General Statutes, including that of 1949 above quoted. The further provision for an investigation and a report to the Probate Court of the revelant facts concerning whether the adoption would be "for the welfare of the child," first enacted in 1943, was designed to guarantee this result. Sup. 1943, § 649g. The same is true of § 650g, now § 6870 of the General Statutes, establishing the confidential status of probate court records in adoption cases, and of § 580, which safeguards the birth and adoption in-

formation in the records of registrars of vital statistics. Other legislation is also indicative of a primary concern on the part of the legislature for the welfare of minor children. The provision for the removal of parents as guardians (§ 6850) and the legislation relating to the Juvenile Court (c. 126) are instances. This legislative consistency is in accord with the principles of our common law. We have repeatedly held in actions for the custody of a child that his welfare must be the controlling consideration. *Claffey* v. *Claffey*, 135 Conn. 374, 377, 64 A. 2d 540; *Hunt* v. *Hunt*, 116 Conn. 701, 702, 163 A. 608. We have pointed out that this principle is determinative even at the expense of depriving a parent of custody. *Don* v. *Frankel*, 136 Conn. 411, 413, 71 A. 2d 713; *Goshkarian's Appeal*, 110 Conn. 463, 468, 148 A. 379; *Kelsey* v. *Green*, 69 Conn. 291, 298, 37 A. 679.

Section 6867 must be construed to effectuate this primary purpose in so far as its language permits. Its terms make clear that at the hearing in the Probate Court it is neither benefit to nor desire of the parties who have joined in the adoption agreement which is to control, but rather the court's decision as to what is best for the child. The procedure prescribed is designed to afford the court the fullest opportunity to ascertain all of the facts and to enable it, after fully and deliberately considering them, to arrive at its decision. In the present case, it is undisputed that the plaintiff was a resident of the probate district, that she and the defendants signed the agreement and the application and that she also signed a waiver of notice of the hearing. From the instant the application and agreement were filed with the court, it had jurisdiction. To hold that the withdrawal of consent thereafter by a party to the agreement was effective to terminate that jurisdiction might well defeat the primary purpose of the

statute. That purpose is to do what is best for the child by insuring a full and fair determination thereof by the court. As a general rule, jurisdiction once acquired is not lost or divested by subsequent events. 21 C. J. S. 143, § 93; see *Boardman* v. *Boardman*, 135 Conn. 124, 132, 62 A. 2d 521; *O'Connor* v. *Stanley*, 54 F. 2d 20, 23. The plain and unambiguous terms of the statute preclude our reading into it the qualification sought by the plaintiff. *State ex rel. Kirby* v. *Board of Fire Commissioners*, 129 Conn. 419, 424, 29 A. 2d 452. It is our conclusion that the statute gives the plaintiff no right by implication which permitted her to deprive the Probate Court of its jurisdiction in the case by withdrawing her consent after the application had been filed.

The fact that a plaintiff mother is without power to terminate the Probate Court's jurisdiction by withdrawing her consent does not mean that the change of heart, or mind, so indicated by her can be ignored. The power of the court to hear and determine, which is implicit in jurisdiction, is not to be confused with the way in which that power must be exercised in order to comply with the terms of the statute. *Terry's Appeal*, 67 Conn. 181, 185, 34 A. 1032; see *E. M. Loew's Enterprises, Inc.* v. *International Alliance*, 127 Conn. 415, 420, 17 A. 2d 525. In the absence of fraud, coercion or other cause rendering the mother's consent inoperative, the fact that after signing an adoption agreement she has changed her mind and attempted to withdraw her consent would not relieve her of her agreement. This would, however, become a very vital fact for the consideration of the Probate Court in determining whether under all of the circumstances the adoption would be for the best interest of the child and so should be approved. As the trial court's memorandum of decision suggests, the determination of this

question involves "considerations that lie deep in human nature." This is a factor which must receive most careful and serious consideration by the Probate Court in reaching its decision. It follows that, while to endow a mother with the anomalous power of divesting the court of jurisdiction after it has once been acquired would deprive the child of the safeguard for its welfare established by the statute, the denial of that power to the mother in no way interferes with an impartial judicial consideration of her maternal rights in view of all of the circumstances, including her changed attitude.

The question decided has never before been considered by this court. Many decisions in other jurisdictions have ruled on the question whether parents' consent to adoption, once given, can be withdrawn and, if so, when and under what circumstances. Most of these are predicated upon varied statutory provisions, and none upon statutes identical with our own. To review these cases would unduly prolong this opinion without compensating benefit. It is sufficient to observe that the cases are in conflict. The majority of the earlier decisions held that consent could be revoked. More recently the trend of authority seems to be the other way. For reference to the earlier authorities, see note, 138 A. L. R. 1038, and 2 C. J. S. 386; for reference to more recent decisions, see note, 156 A. L. R. 1011, and 2 C. J. S. 386 (Ann. Cum. Part 1951, n. 11-15.1). In comparing statutes of other states with ours, the distinction between a unilateral consent and an agreement, resulting in a contract, such as is required by the Connecticut statute is to be borne in mind.

By virtue of the plaintiff's appeal from the decree of the Probate Court and her reasons of appeal, the trial before the Superior Court was a trial de novo. This potentially involved questions of fact as well as ques-

tions of law such as that upon which the Superior Court decided the case. Since under our decision the ruling of the Superior Court, predicated upon its misconstruction of the statute, was ineffective to dispose of the appeal, the case must be remanded to that court for a new trial of the other issues involved; *Rogers* v. *Kinnie*, 134 Conn. 58, 64, 54 A. 2d 487; to find the facts and to conclude upon the facts so found whether under the principles which we have stated the plaintiff's appeal from the decree of the Probate Court should be sustained or dismissed. See *Mossberg* v. *McLaughlin*, 125 Conn. 680, 691, 7 A. 2d 910; *Reiley* v. *Healey*, 124 Conn. 216, 221, 198 A. 570; *Davis' Appeal*, 39 Conn. 395, 401; *Mack's Appeal*, 71 Conn. 122, 132, 41 A. 242; *Beach's Appeal*, 76 Conn. 118, 121, 55 A. 596; 3 Phillips' Conn. Digest 1704; 1 Locke & Kohn, Conn. Probate Practice, pp. 381, 438, 440, 447.

There is error, the judgment is set aside and the case is remanded for further proceedings not inconsistent with this opinion.

In this opinion JENNINGS, BALDWIN and INGLIS, Js., concurred.


O'SULLIVAN, J. (dissenting in part). In the paragraph just before the rescript, the opinion appears to indicate that an appeal from a probate decree upon an adoption matter requires the Superior Court to hold a trial de novo in the broadest sense in which that expression is used. If the paragraph is intended to give approval to that procedure, I must register a dissent, although I am in accord with the opinion as it determines the substantive law of the case.

The statute gives to the Court of Probate exclusive jurisdiction over proposed adoptions. General Statutes § 6866. Jurisdiction is acquired through the action of one or both of the parties in filing an appli-

cation seeking approval of the previously executed adoption agreement. § 6867. The statute further provides that at the hearing subsequently held thereon the Court of Probate may (1) deny the application, or (2) enter a final decree approving the adoption if it is satisfied that the adoption is for the best interest of the child, or (3) enter an interlocutory decree approving the adoption for a limited period of time and ordering another hearing at the end of such period for the purpose of giving final approval to the agreement or of disapproving it, or (4) adjourn the hearing after ordering a further investigation and a report thereon. It is difficult to visualize any clearer language which the legislature might have used in delegating such a wide discretion to a court to which exclusive jurisdiction of the subject matter was also granted.

Since the primary jurisdiction over adoption has been reposed in the Court of Probate, it cannot be usurped by the Superior Court. *Home Trust Co.* v. *Beard,* 116 Conn. 396, 400, 165 A. 208. Nor can the latter exercise a discretion vested in the former. *Reiley* v. *Healey,* 122 Conn. 64, 79, 187 A. 661. The Superior Court can go no further than to review the action of the Court of Probate in an effort to determine whether its discretion has been reasonably and legally exercised. *Gwynn* v. *Tierney,* 138 Conn. 425, 428, 85 A. 2d 250.

The remand in the case at bar goes too far. It should impose upon the Superior Court the limitation of determining no more than whether the Court of Probate acted illegally, or arbitrarily, or so unreasonably as to have abused its discretion.