MEMORANDUM OF DECISION ON MOTION TO TRANSFER
By motion served on February 13, 1997, Simon M.W., the acknowledged father of Simon A.W., born 12/13/94, seeks to transfer back to the New Haven Probate Court two pending petitions to terminate parental rights filed in that court within the preceding ten months. The first was the father's Application for Stepparent Adoption and Consent Termination of Parental Rights filed in the Probate Court on July 9, 1996. Earlier the same day, the Superior Court, Family Division, for the New Haven Judicial District had entered a stipulated judgment in a habeas action initiated by the child's mother, Wendy L.[2] in April of 1995, less than four months after the child's birth. This application was transferred by Keyes, J., the presiding judge of the Probate Court, to the Superior Court for Juvenile Matters on January 9, 1997, on the motion of the mother filed in that court on November 27, 1997.
The second is the mother's petition seeking to terminate the parental rights of the father by reason of his denial, by acts of commission or omission, of the care, guidance or control necessary for the child's well-being. This was also filed on November 27, 1997, and was accompanied by her sworn statement that, "There is a termination proceeding currently in this court based upon my consent, I will withdraw my consent at the next hearing." Also on November 27, Judge Keyes ordered the Department of Children of Families (D.F. ) to submit a study within 90 days, pursuant to Sec. 45a-717, subsection (e) which mandates such CT Page 5126 studies ". . . in any contested case . . ." At the next hearing, however, while the mother filed no formal withdrawal of her consent per se, she submitted an unsworn document stating "I contest the termination of my parental rights." On the same date (January 9, 1997), in response to the father's motion to dismiss for failing to set forth with any particularity the factual basis for her allegation of grounds to terminate his parental rights, as required by subsection (c) of Sec. 45a-715, the Probate Court ordered her to file an amended complaint as to specific acts within thirty days or risk dismissal of her action. The mother filed such particulars on February 6, 1997, and on the same date the judge, presumably suo moto, transferred her petition to terminate the parental rights of Simon M. W. to the Superior Court, as provided by subsection (g) of Sec. 45a-715.
The instant motion to transfer both matters back to the Probate Court was filed a week later. The father's principal argument is that Juvenile Matters, as defined in Sec. 46b-121, specifically excludes ". . . matters of guardianship and adoption", while conceding that it does include "appeals from probate concerning adoption." In the view of the father, Wendy could not withdraw her written consent after its incorporation in the Superior Court's stipulated judgment, even though there has been issued no order of termination by the Probate Court based upon that consent. His only authority for that position is Baileyv. Mars, 138 Conn. 593 (1952), an opinion that predated Stanleyv. Illinois, 405 U.S. 645 (1972) and the statutory sequelae which, in Connecticut, was enacted the following year. (P.A. 73-156.) Forty-five years ago, the Probate Courts had no jurisdiction to terminate parental rights. They were only empowered to process adoption applications based on consent. Prior to 1973, no order terminating parental rights was required from the Probate Court as a necessary step to be taken by that court before processing an adoption application. ConsequentlyBailey is wholly inapplicable under present law which makes consent (not necessarily for adoption) one of five statutory grounds for terminating parental rights in both the Probate and Superior Court. When consent is the only ground pleaded for termination of a parent's rights, no order of termination may issue unless the court first finds, inter alia, that such consent has been given "voluntarily and knowingly". No such finding has yet been made by the New Haven Probate Court. Since November 27, 1996 Wendy has continually manifested her withdrawal of such consent. The Probate Court's recognition of the contested nature of the termination action brought by the father may be inferred CT Page 5127 from its order for a DCF investigation to be submitted by February 27, 1997. It did not order such investigation during the four months that the father's original petition was pending, it was required to do so in any contested matter. Subsection (e)(1) of Sec. 45a-717. (Note: By May 20, 1997, DCF had yet to submit such report and recommendation. ).
Issues:
1. Does the Superior Court lack jurisdiction to determine the validity of a consent to adoption where that consent has been withdrawn prior to the issuance of any order of termination in the Probate Court?
The father's position, as expressed in his counsel's memorandum in support of his motion to transfer back to Probate, is that "There are no grounds for termination alleged in the application which might be contested. The only inquiry for the court is whether the adoption agreement is in Simon's best interest." This court acknowledges that "approval or rejection of that [adoption] agreement is the exclusive province of the Probate Court", but finds that under existing statutory law[3]
the Probate Court could not consider the father's application for stepparent adoption before ordering termination of the mother's parental rights, and this it has not done.
It is therefore found that the Superior Court does not lack jurisdiction to consider a petitions seeking termination of a mother's parental rights based upon her consent when that consent is alleged to have been withdrawn prior to the issuance of any order terminating her parental rights. That the Probate Court regarded this as a contested termination matter (notwithstanding the stipulated judgment of July 9, 1996 in the mother's habeas petition in the Superior Court) is indicated not only by its order for a DCF study on November 27, 1996 but also by later granting the mother's motion to transfer it to the Superior Court under the provisions of subsection (g) of Sec. 45a-715.
2. Do the facts in this case, however, preclude the mother from withdrawing her consent?
The provisions of Chapter 803a (Sec. 45a-771 through 779) entitled "Children Conceived Through Artificial Insemination" shed no light on this case since, despite its title, they relate exclusively to children conceived by married women through CT Page 5128 artificial insemination by anonymous donors. Simon A.W. was conceived by Wendy through artificial insemination by a known donor, Simon M.W., whose name appears on the birth certificate and who has regarded himself, and been regarded by both the Probate and Superior Court, as the acknowledged father of a child born out of wedlock, entitling him to all of the rights of a joint guardian of the person of his biological son. Sec. 45a-606.
The documentation provided to this court does not include any agreements made by the parents prior to conception or birth of the child; any records from the New Haven Probate Court granting temporary custody to the acknowledged father at the time of the child's birth, or any transcript of proceedings in the Family Division prior to the entry of the stipulated judgment. There is thus no basis in the record provided to this court for determining if the consent given in writing by the mother on July 5, 1996 and witnessed by her attorney of record at the time, is, under these circumstances, irrevocable. Rather than litigating this issue ab initio in Juvenile Matters, it would appear more expeditious[4] to refer the following questions back to the Superior Court, Family Division, for further articulation of the judgment entered on July 9, 1996 and, depending upon the responses, for the matter to be referred back either to Juvenile Matters or to the Probate Court for subsequent proceedings: The Juvenile Court if there is to be a fully contested termination action brought by the father; the Probate Court if the mother is precluded from contesting the termination action so that only approval of adoption remains.
Questions to be articulated by the Superior Court, FamilyDivision:
First — Was Wendy's consent to termination of her parental rights for the purpose of a stepparent adoption by the father's wife, which was filed with the Superior Court as a necessary part of the stipulation entered into judgment in that court in her habeas action, rendered irrevocable by the entry of that stipulated judgment?
Second — If so, is any form of contract which renders irrevocable a parent's consent to termination of parental rights, even before an order for termination has been made, void as being in violation of Connecticut public policy and inconsistent with the many legal safeguards to parental rights enacted into Connecticut law over the past 25 years? CT Page 5129
If the answer to the first question is "no" (the consent was not irrevocable), or if the answer to the first question is "yes" (the consent was irrevocable) but the answer to the second question is also "yes" (contrary to public policy), the matter should be referred immediately back to this court for trial on the now contested petition to terminate the mother's parental rights. Since the sole basis for the father's action in the Probate Court was the mother's consent, he will be given thirty days following receipt of the file back in this court in which he may amend his pleading to add any nonconsensual ground(s) to terminate Wendy's parental rights. Wendy's petition to terminate the father's parental rights, unquestionably contested from its outset, could be heard jointly with the father's action since the evidence to be heard in both cases would be largely the same.
If, however, the Family Division determines that Wendy's consent was irrevocable, and that such an interpretation does not
violate public policy, the father's application for adoption should be referred directly back to the Probate Court since the Superior Court, as he correctly argues in his motion, has no jurisdiction over adoptions. Such determination by the Family Division, however, shall be deemed to be an articulation of the stipulated judgment of July 9, 1996, and should Wendy pursue an appeal, the transfer to the Probate Court should be stayed pending exhaustion of the appeal process. While this could take another protracted period of time, it would take far less time than would referring the matter directly back to the Probate Court where approval of the stepparent adoption on the basis of the irrevocability of Wendy's consent could still be appealed, first to the Superior Court and thereafter to the Appellate and Supreme Courts.
The petition to terminate the father's parental rights, filed by the mother in the Probate Court on November 27, 1996, was properly transferred to this court as a contested matter, but proceedings thereon must be stayed pending a final decision on the father's application for stepparent adoption. If the mother' s consent is regarded as irrevocable and such irrevocability is not found to be in violation of public policy, the Probate Court would be free to approve the stepparent adoption sought by Simon M.W. If such approval is not appealed or is found to be without error following an appeal, Wendy would have no standing to pursue termination of the father's parental rights. CT Page 5130
Orders
In consideration of the foregoing, it is hereby ordered that this file be transferred immediately to the Superior Court, Family Division, for the New Haven Judicial District for articulation of the two questions set forth above, as expeditiously as possible.
And it is further ordered that DCF submit to this court the study ordered by the New Haven Probate Court on November 27, 1996, no later than June 27, 1997. If it is not filed by that date, a representative of DCF is ordered to appear in the Superior Court for Juvenile Matters in New Haven at 9 a.m. on Thursday, July 3, 1997 to show cause why the Department should not be found in contempt for failing to complete the study as ordered. Proceedings in Juvenile Matters concerning an older child of Wendy who has previously been the subject of a petition initiated by DCF in the recent past should expedite the preparation of this study.
Entered at New Haven this 27th day of May, 1997
Frederica S. Brenneman, Judge