RACHEL L'MANIAN v. ARTHUR L'MANIAN ET AL.

COURT OF COMMON PLEAS    NEW HAVEN COUNTY    FILE No. 36873

Memorandum filed July 24, 1946.

*Charles Albom,* of New Haven, for the Plaintiff.

*Arthur Klein,* of New Haven, for the Defendants.

FITZGERALD, J. The question is to whom the custody of little Susan Kay L'Manian, born September 24, 1945, should be awarded. The petitioner is the child's mother and the re-

spondent, Arthur L'Manian, is the child's father. The peti-
tioner and said respondent are husband and wife, having mar-
ried in Detroit, Michigan, on February 14, 1945. The re-
spondents, Martha and Joseph Chiaramonte, are sister and
brother-in-law of Arthur L'Manian.

At the trial the evidence offered by the parties was volumi-
nous and at times went into collateral matters beyond the issues
in the case. Only such facts shall be narrated herein as are
deemed pertinent to the sole inquiry of the court in a proceed-
ing of this character. The decision in the case is made to de-
pend upon the determination of what course to follow that
would best serve the welfare of the child. The legal rights of
contesting parents are subordinated to this paramount consider-
ation. *Kelsey* v. *Green,* 69 Conn. 291, 298; *Dunham* v. *Dun-
ham,* 97 Conn. 440, 443; *Pfeiffer* v. *Pfeiffer,* 99 Conn. 154,
157; and see memorandum of the trial court in *Guerra* v. *Guer-
ra,* 13 Conn. Sup. 201.

The petitioner, who is now twenty-two years of age, is a
native and resident of Michigan. Her husband, who now re-
sides in New Haven, is thirty-three years of age. In early
March, 1946, the couple with their child came to New Haven
from Royal Oak, Michigan, where they had been living on the
second floor of a house owned by the petitioner's mother, who
resided on the first floor. The family life of the couple had
not been too happy for some months prior thereto. It appears
that the husband and his mother-in-law found it difficult to get
along on a friendly basis. The scarcity of available housing
accomodations in Royal Oak precluded the husband from ob-
taining living quarters for his family elsewhere in that city. It
was the husband's intention that in coming to New Haven he
could secure employment and suitable living quarters and make
a permanent home for his family. The presence in New Haven
of his married sister and her husband (other named respond-
ents) and of his father was an additional incentive. Upon
arriving in New Haven the couple with their child went to
the Chiaramonte home on View Street. The membership of
that household, composed of six persons including two small
children, is somewhat substantial. The addition of the three
L'Manians from Michigan made the living quarters crowded.
In the space of a few days the petitioner became restless and
yearned to return to Royal Oak and the house of her mother.
She made her state of mind manifest.

The husband had been previously married and divorced by his first wife. He had, therefore, an experience with the law in a very personal sense. Sensing the situation as reflected by his young wife's attitude, and as a condition precedent to accompanying her back to Royal Oak, he prevailed upon her to go with him to the office of a New Haven attorney where a written agreement was entered into by them on March 11, 1946. This agreement provides in substance that it was necessary for the couple to return to Royal Oak to make arrangement for shipping to Connecticut their household effects; that it was deemed advisable to leave the child with the Chiaramontes until their return to Connecticut; that the couple would return to Connecticut to establish residence; that the custody of the child would remain in the father until the parents returned to Connecticut to live as husband and wife; and that no prooceeding for the child's custody would be brought by the wife except in Connecticut where the parties "agreed they have established their legal residence."

Thereafter the couple drove out to Royal Oak. It was the husband's intention to abide by the terms of the agreement. With one qualification it was never the wife's intention to do so. Even when affixing her signature to the agreement she did not intend to carry out its terms except to contest at a later date the custody of the child. The wife admits she no longer has any affection for her husband and will not live with him ever again. The husband says he still loves his wife and wants her to resume living with him in New Haven. The court finds that in signing the aforesaid agreement the wife did so to expedite and assure her return to Royal Oak. When she arrived at Royal Oak she left her husband, went directly to her mother's and almost immediately instituted divorce proceedings in that state against her husband, charging him with intolerable cruelty. The husband has since returned to the Chiaramonte home in New Haven after arranging for the shipment of certain furniture and clothes. Before trial in early July he acquired three separate rooms in the lower portion of the house where his sister and her family reside on the second floor.

The court is able to find that both parents love the child; that the home of the maternal grandmother in Royal Oak is adequate for her upbringing; so also the father's quarters in New Haven with the assistance of his married sister. In addition the court finds that the child presently is given every re-

quired care and attention; that in Royal Oak she would also be given every required care and attention; that the father is not presently employed on a permanent basis but could secure such employment; that the mother is employed; that the mother would have to rely in part upon the assistance of her own mother in caring for the child due to her hours of employment; and that the father in like manner would have to rely in part upon the assistance of his married sister in caring for the child.

Lastly the court finds that both the father and mother have good characters; and that in the last analysis the father's efforts to retain custody is to be attributed in some small part to a desire to compel his wife to return to him. In passing it may be noted that before the wife came on to New Haven in March, 1946, she had instituted an earlier divorce action against her husband in Michigan but later withdrew it. It may be further noted that there is a five-year-old son of the husband's first marriage now living with his divorced wife and her second husband in Oregon. It has been made to appear that the father is some few months in arrears respecting the support of this child ordered by the Michigan court at the time his first wife obtained a decree of divorce against him in that state some few years go. In fairness to the husband the court finds that his noncompliance with the Michigan court order is due to a concentration upon the outcome of this case and the financing of his side of the legal skirmish. Whether or not the expenses of caring for Susan and the support, back, current and future, owing to the mother of his infant son will prove burdensome are matters left for conjecture. An affirmative inference could be drawn if required since the father has very little in the way of a cash reserve.

In the main the answer to the precise problem, in the light of the foregoing findings which are made as kindly as circumstances permit, is found in an outstanding and authoritative text of this period. "In legal contests for the custody of minor children, the law favors the mother. If she is a fit and proper person to have the custody of her children, other things being equal, the mother should be given their custody, in order that the children may not only receive her attention, care, supervision and kindly advice, but also may have the advantage and benefit of a mother's love and devotion for which there is no substitute. For, as has been very well stated by one court, there is but a twilight zone between a mother's love and the

atmosphere of heaven, and all things being equal, no child should be deprived of that maternal influence unless it be shown there are special or extraordinary reasons for so doing.' A mother's care and influence is regarded as particularly important for children of tender age and girls of even more mature years. It is generally conceded that these children will be reared, trained and cared for best by their mother. Accordingly, the courts will ordinarily award the custody of children of tender age, especially girls, to their mother, unless it is clearly shown that she is not a fit and proper person to have the custody of her child, or that the best interests of the child will be far better subserved by placing it in the custody of some other person." 2 Nelson, Divorce & Annulment (2d Ed.), p. 175; and see cases cited in footnotes.

The petitioner is a nonresident. But this aspect in itself does not present an insurmountable difficulty. 2 Nelson, op. cit., p. 199. While it is a factor, it is of minor importance. Note, 20 A. L. R. 838.

It has been noted that the petitioner in late March instituted a divorce action against her husband in Michigan. In that action, which is pending, the petitioner asks for the custody of the child. There are some cases which hold that the pendency of a divorce action in one court precludes another court from entertaining a writ of habeas corpus for custody of children of the marriage. See note, 82 A. L. R. 1146. The situation here is different than in the usual run of cases. The child is in New Haven with her father. Moreover, the parents in their written agreement of March 11, 1946, specified that "no proceedings shall be brought for the custody of said child except in the State of Connecticut." Beyond this single provision it is doubtful whether the agreement on other phases has any validity. The latter determination, however, is left to the court of Michigan before which the divorce action is pending. It need not be considered in this action.

The broad question herein considered has usually come before the court in which a petition for divorce is under consideration. The quotation from Nelson and the cases in the footnotes thereto are referable to actions for divorce. The approach to the problem should be no different in a habeas corpus proceeding involving a contest between parents for the custody of a child, here a child of ten months. The rule stated in *Pfeiffer* v. *Pfeiffer,* supra, is deemed applicable notwith-

standing the pending divorce action in Michigan: "The determination of the custody of an infant, especially when both parents are suitable custodians, rests largely in the discretion of the trial court which sees and hears the contending parties."

In the exercise of its discretion the court awards custody of the child, a mere baby, to the petitioner mother. Judgment to enter accordingly. It is further adjudged that the father shall have right of reasonable visitation subject to further order of court in the premises, enforceable by appropriate action in the forum of the petitioner's present and future domicil.