[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a suit for dissolution of marriage brought by the plaintiff husband against the defendant wife. The parties were married on July 4, 1981 in Avon, Connecticut. They lived together from early January, 1981 until May, 1981 while they were both graduate students at the University of Rochester. There are three children issue of the marriage, Andrea, who was born June 18, 1982, Ashley who was born January 20, 1984 and Garrett who was born January 9, 1987. The children are, then, CT Page 4115 ages 8, 6 and 3. Custody is the real issue in dispute in this case, and there is a report of the Family Relations Division and counsel for the minor children has participated throughout the trial which has lasted for part of ten trial days.
The plaintiff is thirty-one years of age, is in good health and employed as an actuary at Hewitt Associates in the New Canaan office. His salary is $55,600.00 per year and, after deductions for benefits, withholding and social security, a net approximating $40,900.00 ($787.00 per week). His financial affidavit reports $671.27 per week. The plaintiff is overwithholding at the present time because he has cashed in a 401(K) plan to pay debts. He is living in the family home at 160 Greenville Street in Fairfield owned jointly by the parties. The value of this property is reflected in both financial affidavits at $170,000.00. It is subject to a mortgage with an outstanding principal balance of $126,000.00 for a net equity of $44,000.00 ($22,000.00 for each party). The plaintiff holds a Bachelor of Arts degree in Biology and a Bachelor of Science degree in Microbiology.
The defendant is thirty-two years of age and in good health. She is caring for the children during the week, cares for two additional children as a day care provider and earns $100.00 per week. She could take in a third child for day care and could earn $175.00 per week. She is living in Farmington in a rented single family home with a lease which will expire on November 30, 1990. Her monthly rent is $900.00 per month.
In September, 1984, after three years of graduate education and working, the plaintiff entered the Navy in Aviation Officer's Candidate School. He graduated from that program in February, 1985. In September, 1985, he started the flight training program but was disqualified because it was determined that he was marginally color blind. He was discharged in December, 1985. During the same period, the defendant enrolled herself as an aviation intelligence officer but dropped the program after three weeks. From December, 1985 to August, 1988, the plaintiff worked as an actuary for Hewitt and then went to Mobil, working in its benefits and planning department until December, 1989. At that time he returned to Hewitt as a benefits consultant and has worked there ever since.
The defendant has her Master's degree and is an extremely competent individual. She has not, however, had the opportunity to apply her intellectual capacity to any position in the past. She has worked in Devore's Bakery in Fairfield as a delivery clerk nights, has worked in a discount department store and, during the marriage, borrowed on the family equity line and traded stock engaging in short term arbitrage. In 1987 CT Page 4116 and 1988 she spent 25 to 30 hours per week trading. In 1988 her total sales amounted to $775,000.00 resulting in a loss of $8,000.00. [See plaintiff's exhibit F (schedule D consisting of 5 pages).]
At the time of the commencement of this action $17,000.00 was left in this account (see plaintiff's exhibit G and page two of the transcript of court proceedings on September 1, 1989). When the defendant left in July, 1989, she took the balance left in the stock brokerage account and cash advances of $8,249.00. The original amount borrowed against the home equity line was $40,000.00. The $17,000.00 taken by the defendant for living expenses in July and August, 1989 was all that was left of that original amount.
This is one of those unfortunate cases where the parties have battled over custody of the children and virtually exhausted the marital assets and, in the process, have incurred consequential counsel fees, not only for each of them but for counsel for the minor children. The trial of this matter took the major portion of ten trial days. Nothing is to be "read into" the court's comment above. It is meant to be a factual presentation and not by way of criticism of either of the parties.
As has been demonstrated by the evidence in this case, either of the parents would be fit to have custody of these three children. Counsel for the children has summed it up in her claims for relief on behalf of the children as follows: "The three children are bright, happy and well adjusted youngsters, who lead active lives with either parent, (and), love both parents. . . ."
There is no question but that the children display supreme happiness with their father, love him and enjoy being with him. There is no question, either that he has actively participated in their growth and in their lives, feeding them, bathing them, changing diapers in their earlier years, and discussing with them. His philosophy has been to reason with the children, talk things out with them and listen to what they had to say. He has taken them for walks, swimming, to the movies, to the library and to the Audubon Bird Sanctuary. He reads with them and interests them in all kinds of activities.
The plaintiff as previously noted, works. His hours are 8:30 to 5:00, Monday through Friday. He claims he can take days off in his job, that his commuting time is normally fifteen minutes so that he would be able to be with the children for all hours except 8:00 a.m. to 5:15 or 5:20 p. m. He states that he would place Andrea and Ashley in a program before and after CT Page 4117 school and Garrett in a day care program with the YMCA. He believes all would benefit from supervision by professionals and with children of their own age.
The defendant, on the other hand, is available to the children during the week, would be available to them before and after school and would be available to care for Garrett rather than placing him in a day care center. It is not even these aspects of the matter that really make the difference in this case, but rather the tender years of the children and the fact that their mother has been the principal caretaker of the children since their birth.
While the court recognizes that there has been one time when Garrett was left alone and another time when he was down in the basement and fell off a pile of boxes (see plaintiff's exhibit A), such happenings are bound to occur with young children. One could be equally critical of the plaintiff and concerned about his poor driving record in the past.
Based upon the psychological testing of Dr. Baez and the testimony of the parties, it is clear that the parties never should have married. There had been basic differences between these parties before their marriage and throughout their marriage. They separated in 1983 for one week. When the defendant became pregnant with Garrett, the plaintiff expressed skepticism as to his parenthood. There was no "father" designation on Garrett's birth certificate. After Garrett was born, the plaintiff against the defendant's wishes had a vasectomy and then a year later had it reversed.
In April of 1989 the plaintiff moved out of the house during the week and then came home on the weekends and the defendant left the house to visit former college boy friends.
The defendant stated the breakdown was due to the plaintiff's lack of honesty, lack of trust and inability to communicate. It is clear that the last reason, "inability to communicate", was certainly true on the part of both.
Each party has contributed to the breakdown of this marriage, and the court finds that each is equally at fault for the breakdown. Dr. Baez testified that the parties are not appropriately matched and that the interaction of each resulted in the breakdown of the marriage.
In making a determination on the issue of custody of the three minor children the court must consider the best interests of the children. Section 46b-56 (b) of the General Statutes. In the psychological testing of the defendant, Dr. CT Page 4118 Baez found no psychological or psychiatric disorder. He found that she was rigid and inflexible, independent and aggressive, demonstrated overextended assertiveness and was adept at handling social relationships. He found a mild depression, an on going trauma resulting from her relationship with the plaintiff and a self-esteem devastated by the plaintiff.
As to the plaintiff, Dr. Baez found moderate psychological difficulties. He found that the plaintiff was passive aggressive, self-centered and possessed a manipulative behavior to achieve his goals. He found that the plaintiff wanted to control and manipulate and was highly concerned with social status recognition. It was his opinion that either party would make an adequate custodial parent. It was further his opinion that the plaintiff does not now have the emotional stability to take on a major parenting role.
The Family Relations Division made an investigation on the issue of custody. Ms Karen Kutno of that division testified in this proceeding. She, too, testified that her investigation demonstrated that each of the parties have the ability and capacity to be a custodial parent of these three children, but that of the two the defendant was the better choice. She testified that in the long run the defendant would do the better job of parenting.
In determining the issue of custody of the minor children, the guiding principle is what is best for the benefit and welfare of the children. "The only relevant consideration. . .is the welfare of the child." Fagan v. Fagan,131 Conn. 688, 690 (1945); Sullivan v. Sullivan, 141 Conn. 235,242 (1954); Murphy v. Murphy, 143 Conn. 600, 603 (1956); see Kelsey v. Green, 69 Conn. 291, 299 (1897).
 In making or modifying any order with respect to custody or visitation, the court shall be guided by the best interests of the child, giving consideration to the wishes of the child if he is of sufficient age and capable of forming an intelligent preference, provided in making the initial order the court may take into consideration the causes for dissolution of the marriage or legal separation if such causes are relevant in a determination of the best interests of the child.
Section 46b-56 (b) of the Connecticut General Statutes.
The court finds it is in the best interests of the CT Page 4119 children that their custody be awarded to their mother and the plaintiff father shall have liberal and flexible rights of visitation with them, including overnight visits and vacations with them as hereinafter ordered. The plaintiff is to have unlimited telephone access to the children.
The plaintiff has sought joint custody. The parties, however, have been unable to communicate with one another in the children's best interest in the past. Following the defendant's leaving the house with the children, there was a period of time when the plaintiff did not know the children's whereabouts. There were also times when the children were not permitted to talk to their father on the phone. There were times when the defendant did not advise the plaintiff of school functions so that he was unable to attend. On the plaintiff's side, he had the children baptized in the Catholic church without any discussion with the defendant and without inviting her to the baptism. There was also the incident of the eye glasses and Ashley's eye examination.
While the court is hopeful that there might be orders of joint custody at some time in the future, it is not indicated at the present time. See Emerick v. Emerick, 5 Conn. App. 649
(1986). The court does not, thus, adopt the recommendation of counsel for the children.
The financial situation of the parties is extremely poor. The plaintiff has outstanding credit and indebtedness of $25,000.00, loans to family members of $17,000.00 and a car loan of $5,780.00. Except for a checking account of $840.00 at the time of the commencement of trial and approximately $45,000.00 equity in the real property and the parties' tangible personal property, there are no other assets. The defendant had a savings and checking account balance of $575.00 at the commencement of these proceedings.
Dr. Baez is owed $1,250.00. Ms Rosenberg is owed $6,625.00, counsel for the defendant is owed approximately $22,500. Counsel for the plaintiff is owed a comparable amount. The liabilities of the parties exceed the total value of their assets. The defendant executed a $7,000.00 promissory note secured by a mortgage on her interest in the real property to her counsel.
It should be noted that on September 1, 1989 an order was entered in this matter that no monies shall be removed from the People's Securities stock account in the name of the defendant. This money, in the approximate amount of $17,000.00, was removed by the defendant and used to purchase a 1988 Caravan automobile and for a security deposit of $2,000.00 on the home CT Page 4120 she is renting with a lease expiring November 30, 1990. It is fitting that this "taking" by the defendant should be recognized in the division of the parties' marital assets.
With respect to alimony, support and a division of the property of the parties, the law to be considered has been stated as follows:
 To begin with, our alimony statute does not recognize an absolute right to alimony, General Statutes 46b-82; Thomas v. Thomas, 159 Conn. 477, 487, 271 A.2d 42 (1970); `This court has reiterated time and again that awards of financial settlement ancillary to a marital dissolution rest in the sound discretion of the trial court.' (Citation omitted.) Although the court is required to consider the statutory criteria of length of marriage, causes for dissolution, the age, health, station in life, occupation, amount and sources of income, assets and opportunity for future acquisitions of assets of each of the parties, (citation omitted), no single criterion is preferred over all the others. In weighing the factors in a given case, the court is not required to give equal weight to each of the specified items. Nevertheless, it is rather obvious that in making financial determinations, the financial circumstances, both actual and potential, are entitled to great weight. Valente v. Valente, 180 Conn. 528, 530
(1980).
Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account," Scherr v. Scherr,183 Conn. 366, 368 (1981), this court will not recount those statutory criteria and the evidence, other than has been previously stated. "The court is not obligated to make express findings on each of these statutory criteria." (Sections 46b-82
and 46b-81(c) of the General Statutes.) Weiman v. Weiman,188 Conn. 232, 234 (1982).
The court finds, in addition to the findings set forth above, as follows:
1. There is the requisite jurisdiction. CT Page 4121
2. The allegations of the complaint have been proved and are true.
3. The marriage of the parties has broken down irretrievably.
4. Each of the parties has contributed to the breakdown of the marriage.
In arriving at its orders in this matter on the financial issues, the court has considered all of the factors of46b-62, 46b-81, 46b-82 and 46b-84 of the General Statutes. In arriving at its decision on the issue of custody, the court has considered the provisions of 46b-56 and 46b-56a of the General Statutes. In arriving at its decision with respect to alimony, the court has considered the expression of the defendant that she does not desire alimony. However, the court believes that the issue must remain open. The court has entered nonmodifiable orders terminating alimony after a fixed period of time. The court finds that the defendant is in good health and can be fully productive and self-supporting once the children no longer need close supervision.
The court enters the following orders:
1. A decree of dissolution of the marriage shall enter on the grounds of irretrievable breakdown of the marriage on the plaintiff's complaint.
2. Sole custody of the three minor children shall be with the defendant.
3. The plaintiff shall have rights of reasonable and liberal visitation upon reasonable notice which shall include three weekends per month. In months with five weekends, the extra weekend shall be alternated. The plaintiff shall have alternate holiday visitation, three weeks during the childrens' summer vacation and one week vacation during the school year. If the parties are unable to agree on a schedule of visitation, they shall seek the recommendation of counsel for the minor children. If still unable to agree, they shall seek the advice of the Family Relations Division, and if still unable to agree, they shall return to court for further orders in this regard. The plaintiff shall have unlimited telephone communication with the children so long as it is not unreasonable.
4. The plaintiff shall maintain such medical and hospital insurance coverage as he has available through his employment for the benefit of the minor children. Any uninsured or unreimbursed medical, including CT Page 4122 ophthalmological expenses, nursing services and prescriptions or dental, including orthodonture, expenses for the minor children shall be shared equally by the parties. Except in emergency situations, the plaintiff shall be consulted regarding all such services before they are incurred. The defendant shall have the benefit of the provisions of 46b-84 (c) of the General Statutes.
5. The plaintiff shall cooperate with the defendant so that she may have the benefit of the provisions of 38-262d of the General Statutes.
6. The plaintiff shall maintain the term life insurance policy presently maintained which is payable to a trust established by him on March 1, 1990 in which his father and brother are named as trustees for the benefit of the minor children for as long as he is obligated to pay support. The defendant shall be supplied with a copy of such policy and a copy of the trust instrument and certification annually that such insurance and trust instrument continues to be in full force and effect.
7. The plaintiff shall maintain the life insurance coverage he has through his employment for the benefit of the minor children naming the defendant as trustee for the minor children as irrevocable first beneficiary thereof for so long as it is available through his employment and for so long as he is obligated to pay support. He should annually furnish proof to the defendant of the existence of this policy and beneficiary designation.
8. The plaintiff shall pay to the defendant by way of support an amount of $130.00 per week per child. There being no evidence of the plaintiff's delinquency in payment, the court orders a contingent order for wage withholding.
9. The plaintiff shall pay to the defendant by way of alimony an amount of $1.00 per year terminable upon the earliest to occur of the following events: the death of either of the parties, the defendant's remarriage, her cohabitation with a person as may be found pursuant to the provisions of 46b-86 (b) of the General Statutes, or ten years from this date. It shall be nonmodifiable as to term.
10. The court assigns all of the defendant's right, title and interest in and to the real property at 160 Granville Street, Fairfield, to the plaintiff pursuant to the provisions of 46b-81 and subject to the present encumbrances including the lien of $7,000.00 to defendant's counsel. The plaintiff shall be wholly responsible for the CT Page 4123 outstanding mortgage and the home equity credit line and shall indemnify and hold harmless the defendant from any claim or demand therefore. The plaintiff shall pay to the defendant as a division of marital assets the sum of $7,500.00 upon the sale of such property or December 31, 1993, whichever shall first occur.
11. The plaintiff shall pay as a contribution to the defendant's counsel fees the sum of $12,500.00 which said sum shall be paid upon the sale of 160 Granville Street, Fairfield, Connecticut, or December 1, 1993, whichever shall first occur, and which shall include the current $7,000.00 lien upon said property. Said lien shall be released upon payment in full of said $12,500.00 sum.
12. The court allows $6,625.00 to counsel for the minor children as a fair and reasonable amount for her services and orders the parties shall each be responsible for one half of that amount which shall be paid to counsel for the minor children on or before July 1, 1991.
13. The parties shall each pay one half of Dr. Baez's statement for services, and each party shall indemnify and hold harmless the other party as to each party's one half responsibility.
14. The custodial accounts presently in existence for the benefit of each child shall be maintained irrevocably without invasion until a child reaches the age of eighteen (18) years at which time all of the then existing balance will be delivered to each child.
15. The defendant shall not change the residence of the children outside the State of Connecticut without notifying the plaintiff in writing of her intention to do so at least ninety (90) days prior to such change. Each party shall keep the other party advised at all times of the children's address, telephone number and the person or persons with whom they shall be residing if residing with someone other than either party.
16. Each party shall be required to share equally the responsibility for transportation in connection with visitation.
17. The parties shall file joint federal and any state income tax returns for 1988 and 1989. The defendant shall cooperate in providing any necessary information. The plaintiff shall be responsible for any taxes, interest or penalties due and shall indemnify and hold harmless the CT Page 4124 defendant thereon. Any refund shall be the property of the plaintiff.
18. The plaintiff shall be wholly responsible for those liabilities set forth in his financial affidavit and shall indemnify and hold harmless the defendant from any claims or demands thereon. The defendant shall be wholly responsible for the liabilities set forth in her financial affidavit (except for those liabilities reflected in the plaintiff's financial affidavit) and for credit card indebtedness she may have in her own name and shall indemnify and hold harmless the plaintiff from any claims or demands thereon.
19. The tangible personal property at 160 Granville Street shall be divided between the parties as they shall agree. If the parties are unable to agree upon division of such tangible personal property giving consideration of the source of the items, its use at its present location and whether it is necessary to replace for operation of a household where children are visiting weekends, the matter shall be referred to the Family Relations Division for mediation, and if such mediation is unsuccessful, they shall return to court for further orders. Such division shall be accomplished at as early a date as possible to the extent the parties can agree.
20. Such tangible personal property as is in the defendant's possession shall be hers free of any claim or demand by the plaintiff.
21. The plaintiff shall cooperate with the defendant upon the processing of her outstanding medical bills with his medical insurance carrier and any reimbursement for such expenses if payable to the plaintiff shall be endorsed over to the defendant.
Judgment shall enter in accordance with the foregoing.
EDGAR W. BASSICK, III, JUDGE