## Sellinger's Adm'r et al. v. Reeves et al.

Nov. 17, 1942.

Allen P. Dodd Jr., and Donald V. Hunter for appellants.

Hubert Meredith, Attorney General, A. E. Funk, Assistant Attorney General, and Earl Wilson for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The administrator of the estate of Max Sellinger seeks a refund of inheritance taxes, amounting to $140,-220.61, paid on gifts made by Sellinger prior to his death.

Max Sellinger died testate a resident of Louisville, Kentucky, on April 9, 1938, at the age of 86, leaving surviving him his wife, Mrs. Nannie Sellinger, and two daughters, Miss Jessie Sellinger and Mrs. Leah Sellinger Stannard. On October 16, 1935, when he was more than 83 years of age, Max Sellinger made certain gifts to his wife and daughters and paid the gift taxes thereon. On the date of the gifts the value of the property owned by the donor, which consisted principally of intangible personal property, was $2,412,371.80. He gave to his wife $531,344, to Mrs. Stannard $530,835, and to Miss Jessie Sellinger $532,571. He retained for himself property worth $817,621.80. After his death his admin-

istrator paid the sum of $18,565.30 as the amount of inheritance taxes due by the estate. The Department of Revenue took the position that the gifts made on October 16, 1935, were made in contemplation of death within the meaning of the Inheritance Tax Statutes, and an additional assessment against the estate in the amount of $140,220.61 was made. That amount was paid under protest, and a petition for review was filed with the Kentucky Tax Commission which found that the gifts were testamentary in character and refused to grand the refund requested. An appeal was taken to the Franklin circuit court where the action of the commission was affirmed. On this appeal it is earnestly insisted that the evidence introduced by appellants overcomes the presumption created by the statute that the gifts were made in contemplation of death.

KRS 140.020 (Carroll's Kentucky Statutes, 1936 Edition, Section 4281a-13) reads:

"Every transfer made within three years prior to the death of the grantor, vendor, or donor of a material part of his estate, or in the nature of a final disposition or distribution thereof, and without an adequate valuable consideration, shall be construed prima facie to have been made in contemplation of death within the meaning of this section. And in the event a transfer was made more than three years prior to the death of the decedent it shall be a question of fact to be determined by the proper tribunal whether such transfer was made in contemplation of death."

That section of the Statutes was under review in Chase's Ex'x v. Commonwealth, 284 Ky. 471, 145 S. W. (2d) 58, 59, where it was said:

"Gifts made in contemplation of death within the meaning of the Inheritance Tax Act are gifts motivated by the thought of death. This does not mean that the donor must believe that death is imminent. The purpose of inserting in inheritance tax laws provisions for taxing gifts made in contemplation of death is to prevent evasion of the tax by transfers which are merely substitutes for testamentary dispositions, and the determination of the nature of the gifts turns on the motive of the donor. United States v. Wells, 283 U. S. 102, 51 S. Ct. 446, 75 L. Ed.

867; Milliken v. United States, 283 U. S. 15, 51 S. Ct. 324, 75 L. Ed. 809; Perry v. Martin, 125 N. J. L. 46, 14 A. (2d) 266; Mossberg v. McLaughlin, 125 Conn. 680, 7 A. (2d) 910. The value of the gift, age of the donor, and condition of his health are some of the circumstances to be considered in determining the question of motive. Under our statute a gift made within three years prior to the death of the donor is subject to the tax unless it is shown that it was not made in contemplation of death, and the burden of overcoming the presumption created by the statute is upon those who claim the estate.''

In that case Charles C. Chase died at the age of 72, leaving a net estate of more than $600,000. During the last six months of his life he made gifts aggregating $40,-000 to his wife and three daughters. During the last three months of his life he was in ill health, but there was proof to the effect that he did not consider himself in danger of immediate death. The principal issue in the case was whether the gifts constituted a material part of the donor's estate within the meaning of the statute, but it was held that the evidence was insufficient to overcome the prima facie presumption that they were made in contemplation of death.

The evidence introduced by appellants in the instant case to overcome the prima facie presumption created by the statute shows that Mr. Sellinger was 83 years and six months of age when the gifts were made. It had been his custom since 1918 to spend the summer months with his wife, two daughters, and Mrs. Stannard's husband and daughter at a hotel in Atlantic City and the winter months in Florida. He paid all expenses. In June, 1934, just before leaving for his annual sojourn at Atlantic City, he consulted two eminent physicians in Louisville. They found that he was suffering from cancer of the rectum and so informed his wife and daughters, but did not disclose their findings to Mr. Sellinger. They wrote to Dr. Samuel L. Salasin, Mr. Sellinger's physician in Atlantic City, and informed him that they had examined Mr. Sellinger and found that he had a tumor in the rectum which was adeno-carcinoma in character. They advised immediate surgical removal and radium treatments. Dr. Salasin examined Mr. Sellinger upon the latter's arrival in Atlantic City, and his diagnosis coincided with that of the Louisville physicians. He suggested

a consultaton with Dr. George E. Pfahler of Philadelphia, a cancer specialist. Mr. Sellinger went to Philadelphia immediately and was examined by Dr. Pfahler, who concurred in the diagnosis of the other physicians. At his suggestion Mr. Sellinger entered a hospital in Philadelphia, and on July 6, 1934, a colotomy operation was performed which was to effect a by-pass from his bowels and avoid irritation of the rectum. Dr. Pfahler then gave him a course of radium treatments, and in March, 1935, declared him cured. At the insistence of Mr. Sellinger, an operation to close the colotomy was performed, and he remained in the hospital until July, 1935, when he returned to his apartment in the hotel at Atlantic City where he remained until the gifts were made in October. He spent the winters of 1935-1936 and 1936-1937 in Florida, and the summers of 1936 and 1937 in Atlantic City. Late in the year 1937 it was found that he was suffering from cancer of the tongue, and he was given radium treatments for this until his death in April, 1938. The immediate cause of his death was pneumonia. Dr. Salasin and Dr. Pfahler testified that they never told Mr. Sellinger that he was suffering from cancer, and he never intimated that he knew the nature of his illness although he knew he was being treated with radium.

The evidence shows that Mr. Sellinger was a very intelligent man, and until a few months before he entered the hospital in Philadelphia had been in good health. He remained in the hospital one year, when he was pronounced cured by his physician, and apparently was in good health when the gifts were made three months after his release. The gifts amounted to more than three-fifths of his entire estate, and were in equal amounts to his wife and two daughters. He never discussed his financial affairs or the condition of his health with anyone, not even the members of his family. His daughters testified that Mr. Sellinger was optimistic and cheerful, and was planning for the future up to the date of his death. It is not claimed that the gifts did not constitute a material part of the donor's estate, but it is argued that the evidence negatives the idea that the gifts were motivated by the thought of death. It is asserted that the principal motive actuating Mr. Sellinger was to relieve him of passing upon the expenditures of the three donees and to make them independent of him. The object of the Inheritance Tax Statute is to tax not only testamentary

and intestate transfers but also inter vivos transfers which are, in fact, substitutes for testamentary dispositions. To bring a gift inter vivos within the purview of our Inheritance Tax Statutes and render it taxable, it is not necessary that the donor be motivated alone by the thought of death. If contemplation of death is one of the motives, the transfer may be taxable though other motives are present. A desire to see a donee have a present enjoyment of the property and to see him established with a separate competency are not necessarily inconsistent with the transfer of the property in contemplation of death within the meaning of the statute. In ascertaining the motive or motives actuating the donor, facts may be considered such as his age and state of health at the time the gift was made, the amount of the gift, the relationship of the donees, his habits and propensities, and other pertinent circumsances. Chase's Ex'x v. Commonwealth, supra; Dommerich v. Kelly, 132 N. J. Eq. 220, 27 A. (2d) 871; Kavanagh v. Kelly, 131 N. J. Eq. 398, 25 A. (2d) 547; Purvin v. Commissioner of Internal Revenue, 7 Cir., 96 F. (2d) 929, 120 A. L. R. 166. In the present case the donor was more than 83 years of age. During twelve months out of the fifteen months next preceding the date when the gifts were made, he had been in a hospital and had undergone a number of serious operations. He was suffering from cancer, and while it is claimed the proof fails to show he knew the nature of his illness, it is admitted he knew he was being treated with radium. He was generous in caring for the members of his family, but aside from paying their living expenses had never made large gifts to them. The gifts were made to the natural objects of his bounty. The evidence introduced by the claimants of the estate does not negative the idea that the transfers were made in contemplation of death, but merely provides facts and circumstances from which inferences may be drawn by the fact-finding body. Even if it be conceded that the evidence is contrary to the presumption created by the statute and the presumption disappears, yet the case stands upon the facts and the reasonable inferences to be drawn therefrom. The significant facts in this case are: The decedent was more than 83 years of age when the gifts were made; he had just passed through a serious illness lasting more than a year and during that time several serious operations were performed; he gave to the natural objects of his bounty

more than three-fifths of an estate amounting to approximately $2,500,000. We think the logical inference from these and other facts and circumstances disclosed by the evidence is that the gifts were made in contemplation of death within the meaning of our Inheritance Tax Act and the Kentucky Tax Commission having so concluded, the circuit court properly refused to reverse its finding.

The judgment is affirmed.