J-S30039-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSEPH  A. MICUCCI, | : | |
| | : | |
| Appellant | : | No. 1268 EDA 2018 |

Appeal from the Judgment of Sentence April 11, 2018
in the Court of Common Pleas of Montgomery
County Criminal Division at No(s):  CP-46-CR-0002527-2017

BEFORE:  PANELLA, P.J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:　　　　　　　　**FILED JULY 30, 2019**

Joseph A. Micucci ("Micucci") appeals from the judgment of sentence imposed following his conviction of simple assault and recklessly endangering another person ("REAP").[1]  We affirm.

In its Opinion, the trial court set forth the relevant factual and procedural history underlying this appeal, which we incorporate as though fully stated herein.  **See** Trial Court Opinion, 8/9/18, at 1-6.

Micucci now raises the following issues for our review:

1. Whether the trial court committed an error of law and abuse of discretion in finding [Micucci] guilty of [REAP] because the Commonwealth failed to present sufficient evidence[,] beyond a reasonable doubt[,] to prove the element of reckless conduct by [Micucci,] which placed or may have placed another person in danger of death or serious bodily injury:  to wit[, Micucci] simply pointing a lawfully owned and possessed gun in his home at Tracy

---

[1] 18 Pa.C.S.A. §§ 2701(a)(1), 2705.

Thomson [("Thomson")] did not amount to reckless conduct that placed someone in danger of death or serious bodily injury[?]

2. Whether the trial court committed an error of law and abuse of discretion in prohibiting [Micucci] from cross[-]examining the complaining witness[, ] Thom[]son[,] regarding her past mental health history and drug use, as it was relevant to show motive and bias against [Micucci?]

3. The trial court committed an error of law and abuse of discretion in imposing the deadly weapon [] sentencing guidelines for the charge of [REAP], when the actual weapon being used was the basis for the guilty verdict of the crime[?]

Brief for Appellant at 4-5 (some capitalization omitted).

In his first claim, Micucci argues that the evidence was insufficient to sustain his REAP conviction. *Id.* at 11. Micucci acknowledges that he briefly pointed his gun at Thomson's head, but states that "the brandishing of the weapon was fleeting in nature…." *Id.* at 13. According to Micucci, there is no evidence that he threatened to kill Thomson, and the two never struggled over the gun. *Id.* Micucci also claims that pointing a loaded firearm at Thomson, without more, does not support a finding that he consciously disregarded a known risk. *Id.* at 14-15; *see also id.* (wherein Micucci states his apparent belief that his knowledge of how to operate a firearm precludes the possibility of an accidental discharge).

In its Opinion, the trial court set forth the relevant law, addressed Micucci's first claim, and concluded that it lacks merit. *See* Trial Court Opinion, 8/9/18, at 7-10. The trial court highlighted the "highly charged and emotionally unstable atmosphere in which the underlying episode occurred."

- 2 -

*Id.* at 9.  The trial court further noted that Micucci had pointed his gun at Thomson's head while she was kneeling on the floor, defenseless.  *Id.* at 10. We agree with the trial court's analysis, and conclude that the evidence, viewed in the light most favorable to the Commonwealth as the verdict winner, was sufficient to sustain Micucci's REAP conviction.  *See id.* at 7-10.  We therefore affirm on the basis of the trial court's analysis as to Micucci's first claim.  *See id.*

In his second claim, Micucci challenges the trial court's preclusion of testimony, during cross-examination, regarding Thomson's mental health history and drug use.  Brief for Appellant at 16.  Micucci argues that such evidence would have impeached Thomson's credibility.  *Id.* at 17-18. According to Micucci, Thomson's mental health had a major impact on the parties' custody proceedings, and Micucci's proposed "impeachable line of questioning" would explain Thomson's motive to exaggerate or fabricate information in an attempt to gain custody of their daughter, as well as her bias against Micucci.  *Id.* at 18-19.

Initially, we observe that Micucci has provided only a cursory citation to the Rules of Evidence, and points to only one specific portion of Thomson's testimony, which, he believes, was an exaggeration or fabrication of information.  Micucci fails to support his claim with citation to, and discussion of, relevant case law.  *See* Pa.R.A.P. 2119(a) (stating that the argument shall include "such discussion and citation of authorities as are deemed pertinent.").

Therefore, this claim is waived. ***Commonwealth v. Johnson***, 985 A.2d 915, 924 (Pa. 2009) (stating that "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.").[2]

In his third claim, Micucci challenges the trial court's imposition of the deadly weapon enhancement. Brief for Appellant at 20. Micucci asserts that because his conviction was based on the use of a firearm, "imposition of the deadly weapon [] enhancement amounts to a double penalty…." ***Id.*** at 20; ***see also id.*** at 21-22 (asserting that the limited exception set forth at 204

---

[2] In its Opinion, the trial court determined that Micucci's evidentiary claim was likewise waived because he failed to adequately preserve it at trial. ***See*** Trial Court Opinion, 8/9/18, at 10-12; ***see also id.*** at 12 (indicating that, during trial, Micucci intended to question Thomson regarding her mental health history and the impact of taking—or not taking—medications in order to attack her credibility; however, Micucci did not raise an argument concerning Thomson's motive or bias at any time during trial). The trial court nevertheless addressed the merits of Micucci's claim, and concluded that it lacks merit because (1) Micucci did not adequately develop the record with expert testimony, reports, or any other evidence to substantiate a claim that Thomson's mental health affected her credibility; and (2) even without such testimony, the record contains ample evidence concerning the parties' potential biases and motivations, *i.e.*, undisputed testimony by both Micucci and Thomson regarding the volatile nature of their relationship and their custody battle. ***See id.*** 13-14. Even if Micucci had not waived this claim, we would conclude that it lacks merit for the reasons stated by the trial court in its Opinion. ***See id.***

Pa. Code § 303.10(a)(3)(xi)[3] should extend to the instant case, because his possession of a deadly weapon, although not an element of REAP, was the basis for his conviction).

Micucci's claim raises a challenge to the discretionary aspects of his sentence. *See Commonwealth v. Tavarez*, 174 A.3d 7, 9-10 (Pa. Super. 2017). "It is well-settled that, with regard to the discretionary aspects of sentencing, there is no automatic right to appeal." *Commonwealth v. Mastromarino*, 2 A.3d 581, 585 (Pa. Super. 2010).

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> We conduct a four-part analysis to determine: (1) whether the appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether the appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010).

Here, Micucci filed a timely Notice of Appeal, preserved his sentencing claim in a timely post-sentence Motion, and included a Rule 2119(f) Statement

---

[3] Section 303.10(a)(3)(xi) of the Sentencing Guidelines provides that the deadly weapon enhancement shall not be applied to "[a]ny other offense [*i.e.*, other than those otherwise enumerated under Section 303.10] for which possession of a deadly weapon is an element of the statutory definition." 204 Pa. Code § 303.10(a)(3)(xi).

in his brief.[4]  Additionally, Micucci's claim raises a substantial question for our review.  ***Tavarez***, 174 A.3d at 10 (stating that "a substantial question is raised where an appellant alleges his sentence is excessive due to the sentencing court's error in applying the deadly weapon enhancement." (citation, quotation marks and brackets omitted)).

While Micucci has raised a substantial question, he fails to adequately develop his argument, or provide citation to or discussion of any relevant case law in support of his claim.  ***See*** Pa.R.A.P. 2119(a).  Because Micucci's final claim is not properly developed for our review, it is waived.  ***See Johnson***, ***supra***.[5]

Judgment of sentence affirmed.

_____

[4] We note that Micucci combines his Rule 2119(f) Statement with the Argument, rather than including a *separate* section in his brief.  ***See*** Pa.R.A.P. 2119(f) (providing that an appellant challenging the discretionary aspects of his sentence must include a separate section setting forth a concise statement of the reasons relied upon for allowance of appeal).

[5] Even if Micucci had not waived this claim, we would conclude that it lacks merit.  The Sentencing Code provides that the deadly weapon enhancement "shall apply to each conviction offense for which a deadly weapon is possessed or used."  204 Pa. Code § 303.10(a)(4).  "The trial court may not disregard an applicable enhancement when determining the appropriate sentencing ranges."  ***Tavarez***, 174 A.3d at 10.  Further, as the trial court stated in its Opinion, "[t]he record in this case amply reflects the violence, requisite recklessness, and tremendous potential for serious injury, if not death[,]" which would merit the enhanced penalties.  ***See*** Trial Court Opinion, 8/9/18, at 16-17.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/30/19

OPINION

# IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | NO. 2527-17 |
| | : | 1268 EDA 2018 |
| v. | : | |
| | : | |
| JOSEPH A. MICUCCI | : | |

## OPINION

**Branca, J.**                                                                      **August 9, 2018**

## I.    INTRODUCTION

Joseph A. Micucci ("Defendant") appeals to the Superior Court from the sentence imposed by this Court on April 11, 2018, and its denial of Defendant's Post-Sentence Motion. For the reasons that follow, Defendant's appeal is without merit.

## II.    STATEMENT OF THE CASE

### A.    Factual History

By way of background, Defendant and the victim in this case, Ms. Thomson, have shared a volatile on-again, off-again relationship since the 2006 birth of their daughter, I.M. [N.T. 1/18/18, at 24-25].[1] In 2011, Defendant was awarded primary custody of I.M., with Ms. Thomson being permitted supervised visitation. [N.T. 1/18/18, at 25, 106]. For the first few years of the custody arrangement, Ms. Thomson and Defendant had no relationship. At some point, she and Defendant developed a "casual" sexual relationship, lasting approximately one month from March 2015 to April 2015, from which they opted to shield I.M. for her own wellbeing given their tumultuous past. During this period, Ms. Thomson spent a few nights per week at Defendant's home, located at 205 Cadwalader Avenue, Abington, Montgomery County,

---

[1] Ms. Thomson testified that Defendant "drug her down the stairs" in or about September 2015. [N.T. 1/18/18, at 44-45, 149-151].

1

Pennsylvania, without I.M's knowledge. [N.T. 1/18/18, at 26-29, 252]. In approximately March 2016, Defendant encouraged Ms. Thomson, who had been employed, to quit her job and begin caring for I.M. fulltime to alleviate demands on Defendant's work schedule, and simultaneously fulfill Ms. Thomson's long-time desire to be a fulltime mother. By the time Ms. Thomson quit her job to take care of I.M., the parties' physical relationship had apparently ceased, and she slept on the couch in Defendant's home. [N.T. 1/18/18, at 28-29].

By Spring 2017, Ms. Thomson admitted that her relationship with Defendant began to significantly deteriorate. [N.T. 1/18/18, at 104]. More specifically, Ms. Thomson recalled an occasion in February or March 2017, in which she had commented to Defendant how 'stressed out' he had been, and in response, in his daughter's presence, he smashed his coffee mug on the table, cutting himself in the process. [N.T. 1/18/18, at 105]. Making matters worse, Defendant, a contractor who owned his own business, had told Ms. Thomson that he and his company were the subject of a significant civil lawsuit, about which he was "extremely stressed" out of concern for its potentially devastating financial impact. According to Ms. Thomson, the environment in the home was "very, very tense." [N.T. 1/18/18, at 36-37]. In light of that tension, Ms. Thomson had begun to avoid Defendant as much as possible.

Despite her efforts, however, Ms. Thomson soon became the target of Defendant's frustration and violent temper. More specifically, on March 24, 2017, at approximately 10:00 pm, Ms. Thomson returned to Defendant's home, where she had been staying for approximately the last year. [N.T. 1/18/18, at 37]. She had avoided going home that evening, lingering in a nearby park after dropping her daughter at a friend's for a sleepover. Eventually, Ms. Thomson decided she would go home in hopes of not further aggravating Defendant. Upon arriving home, she tried to avoid Defendant by going directly upstairs, intending to use the bathroom, and change into sweatpants. [N.T. 1/18/18, at 38]. When she approached the bathroom, however,

2

she found Defendant leaning in its archway and blocking its entrance. Ms. Thomson approached, and asked if she could use the bathroom, at which point she "smelled alcohol" on Defendant [N.T. 1/18/18, at 39]. Defendant crassly responded "number one or number two?" At which point, sensing Defendant's angst, Ms. Thomson abandoned her attempt to use the bathroom, retreated and closed the door to her daughter's bedroom where she kept her own clothes to change from her jeans into sweatpants. Ms. Thomson explained she was somewhat taken aback, when Defendant, who customarily respected her privacy while changing, thrust open the bedroom door while she was putting on her sweatshirt, and told her to "get the fuck out." [N.T. 1/18/18, at 40]. Ms. Thomson responded that she would leave but wanted to get her shoes on. Defendant told her to get her "fucking shoes and get out." As she tried to grab her clothes and throw them in a backpack, Defendant, who was yelling that she was a "fucking loser," grabbed her by the back of her sweatshirt, her hair tangled in his grasp, dragged her down the stairs, and dropped her crying on the floor. [N.T. 1/18/18, at 42]. As Ms. Thomson got herself to her feet to leave, Defendant pushed her back down onto a nearby loveseat, while calling her a "fucking loser," a "really bad mom," and a "deadbeat." [N.T. 1/18/18, at 42-43]. Ms. Thomson testified that while she could have run from the house at that moment she hesitated out of fear for herself and her daughter that, if she left then, she would not be able to come back and live with her daughter; and that she would be denied all the time she longed so dearly to spend with her. Once Defendant stopped yelling at her, Ms. Thomson finally exited the home.

Ms. Thomson drove away and ultimately pulled over, crying hysterically, to read a text message she noticed Defendant had sent her. During trial she reflected on a prior occasion when Defendant had dragged her down the stairs and kicked her out of the house, and how Defendant had called her within a minute after she had driven away, to tell her she was hysterical and should not drive in that condition, and asking her to 'come back.' [N.T. 1/18/18, at 104, 45].

3

Ms. Thomson testified that she had hoped Defendant's instant text would be of similar tone and that she would not have to prepare herself to return to the courts for the chance to see her daughter again. Instead, Defendant's hortative text said only, "next time you'll choose your words more wisely." [N.T. 1/18/18, at 44]. Ms. Thomson texted back to Defendant that what had just happened was awful, that she had only wanted to get her stuff, and that she would be back to get her things; as she extrapolated from Defendant's reference to there being a 'next time' to mean that she was not really barred from returning to the home. [N.T. 1/18/18, at 45]. At trial, Ms. Thomson confirmed that she texted Defendant before she returned to the home that she was coming back and that he had not responded. [N.T. 1/18/18, at 45-46].

Sometime later that same night, Ms. Thomson returned to the home to retrieve some of her belongings including important financial documents. When she returned the house was dark, so she set about retrieving her mail, at which point she was startled by Defendant, lurking in the dark seated in his massage chair which was not operating. To avoid Defendant, she immediately went upstairs to her daughter's room to pack her bag. Then, while she was kneeling on that bedroom floor, quickly cramming her belongings into a backpack, no doubt still shaken from Defendant's earlier physical assault, Ms. Thomson looked up to see Defendant, hovering menacingly over her, pointing his loaded handgun two feet from her head, telling her to "get the fuck out." [N.T. 1/18/18, at 50-51].

Terrified that Defendant was going to shoot her, Ms. Thomson sprung back from the weapon. [N.T. 1/18/18, at 52]. Hoping to dissuade Defendant from further action, she warned him that she was recording his threats with her phone. A struggle for the phone, which was in the front pocket of her hoody, quickly ensued as Defendant tucked his loaded weapon into his waistband. [N.T. 1/18/18, at 53]. Ms. Thomson managed to open a nearby bedroom window and yell for help to a neighbor, as Defendant seized her phone and exited the bedroom. After

4

yelling for help, Ms. Thomson followed Defendant to retrieve her phone. When Defendant was not able to unlock the phone he snapped the phone in half, cutting himself in the process.

Defendant then retreated to his bedroom, unloading the bullets from the clip of his handgun and placing the bullets and handgun in the drawer of his nightstand. [N.T. 1/18/18, at 57]. Defendant and Ms. Thomson continued to fight, with Defendant kicking and dragging her down the steps, throwing her to the floor and screaming at her. Defendant ultimately physically threw Ms. Thomson out of the house and down the back stairs to the ground where she saw her neighbor on the phone, gesturing for her to come to safety. Police arrived on the scene and Ms. Thomson eventually returned with them to the station to make a statement and have her injuries photographed. [N.T. 1/18/18, at 76-77, Ex. C-1 through C-15 ("Photographs")].

On Bill of Information 2527-2017, the Commonwealth charged Defendant with Count One—Strangulation (blocking of nose and mouth,) Count Two—Simple Assault, Count Three—Recklessly Endangering Another Person,) and Count Four—Strangulation (Throat/Neck).[2]

## B.      Procedural History

The case proceeded to a two-day bench trial before the undersigned wherein Defendant was found guilty of Simple Assault and Recklessly Endangering Another Person.[3] On April 11, 2018, after reviewing the Presentence Investigation (PSI) report, the undersigned conducted a sentencing hearing. Defendant exercised his right to allocution, stating:[4]

> Thank you, Your Honor. I just want to start off by saying that I do take full accountability for the crimes that I have committed [sic] of. I want to apologize to you, to the D.A., and I guess most importantly Ms. Thomson for my actions.
>
> My whole life is my daughter. I just want to have the ability to protect her and, again, I'm sorry. I am honestly a good person and I can assure you that nothing

---

[2] 18 Pa. C.S. § 2701(a)(1); 18 Pa. C.S. § 2705; 18 Pa. C.S. § 2718(a)(1).
[3] The Court granted Defendant's Motion for Judgment of Acquittal on Count One (Strangulation) and the Commonwealth withdrew Count Four (Strangulation).
[4] [N.T. 4/11/18, at 30].

5

like this will ever happen again. I mean this from the bottom of my heart. Thank you.

At the hearing's conclusion, the Court sentenced Defendant on Count Three (Recklessly Endangering Another Person) to undergo imprisonment of six (6) to twenty-three (23) months, with a two (2) year concurrent probation on Count Two (Simple Assault).[5] On April 17, 2018, Defendant filed a Post-Sentence Motion, asserting therein a Motion to Modify Sentence and A motion for Judgment of Acquittal; which the Court denied by Order dated April 23, 2018. On April 27, 2018, Defendant timely filed a Notice of Appeal challenging the imposition of his sentence. On May 22, 2018, upon the Court's request and pursuant to Pa. R.A.P. 1925(b), Defendant filed a 'Concise Statement of Matters Complained on Appeal," enumerating the following issues for review:

> 1.    The Trial Court committed an error of law and abuse of discretion in finding defendant guilty of Recklessly Endangering Another Person because the Commonwealth failed to present sufficient evidence beyond a reasonable doubt to prove the element of reckless conduct by the Defendant which placed or may have placed another person in danger of death or serious bodily injury: to wit Defendant simply pointing a lawfully owned and possessed gun in his home at Tracy Thomson did not amount to reckless conduct that placed someone in danger of death or serious bodily injury.
>
> 2.    The Trial Court committed an error of law and abuse of discretion in prohibiting Defendant from cross examining the complaining witness Tracy Thomson regarding her past mental health history and drug use, as it was relevant to show motive and bias against the Defendant.
>
> 3.    The Trial Court committed an error of law and abuse of discretion in imposing the deadly weapon used sentencing guidelines for the charge of Recklessly Endangering Another Person, when the actual weapon being used was the basis for the guilty verdict of the crime.

## III.    DISCUSSION

On appeal, Defendant asserts that the Court erred in finding sufficient evidence of recklessly endangering another person, denying Defendant the opportunity to cross-examine the

---

[5] [N.T. 4/11/18, at 36, Ex. D-1 (Post Sentence Rights Form)].

6

victim on her alleged history of mental health and drug use issues, as well as discretionary aspects of the Court's sentence in imposing the deadly weapon enhancement ("DWE") sentencing guideline. As addressed hereinafter, Defendant's claims are meritless.

The standard of review applied to claims raised on appeal is limited to determining whether the trial court abused its discretion or committed an error of law. *See Commonwealth v. West*, 937 A.2d 516, 521 (Pa. Super. Ct. 2007). In evaluating a trial court's decision, an "abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Commonwealth v. Greer*, 951 A.2d 346, 355 (Pa. 2008) (internal quotation omitted).

### A. The Commonwealth's Evidence Is Sufficient To Sustain Defendant's Conviction For Recklessly Endangering Another Person.

Preliminarily, Defendant claims that the Commonwealth failed to set forth sufficient evidence to sustain Defendant's conviction for Recklessly Endangering Another Person.[6] As discussed below, the Commonwealth's evidence, including the victim's testimony, corroborated by her medical records as well as the testimony of first responders, sufficiently support the Court's finding that Defendant engaged in reckless conduct which placed or might have placed Ms. Thomson in danger of serious bodily injury or death.

The standard of review for sufficiency of the evidence claims is as follows:

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When

---

[6] In accordance with Pa. R. Crim. P. 720, Defendant preserved his underlying claim by filing a Post-Sentence Motion, which included therein a Motion for Judgment of Acquittal. [Def.'s Post-Sentence Mot. (4/17/18)].

reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Stahl*, 175 A.3d 301, 303–304 (Pa. Super. Ct. 2017) (internal citation omitted).

Moreover, the Commonwealth "may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Commonwealth v. Dellavecchia*, 725 A.2d 186, 188 (Pa. Super. Ct. 1998) *(en banc)*. More specifically:

> [t]he facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence, but the question of any doubt is for the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The proper application of this standard requires us to evaluate the entire trial record, and all evidence actually received, in the aggregate and not as fragments isolated from the totality of the evidence.

*Commonwealth v. Hopkins*, 747 A.2d 910, 913–14 (Pa. Super. Ct. 2000) (internal citations omitted). Finally, the trier of fact is free to believe all, some, or none of the testimony presented and the appellate court is precluded from reweighing the evidence and substituting its own judgment for that of the finder of fact. *Commonwealth v. Martuscelli*, 54 A.3d 940, 947 (Pa. Super. Ct. 2012). "If the factfinder reasonably could have determined from the evidence adduced that all of the necessary elements of the crime were established, then that evidence will be deemed sufficient to support the verdict." *Commonwealth v. Hopkins*, 747 A.2d 910, 914 (Pa. Super. Ct. 2000) (internal citations omitted).

Pursuant to Title 18, Section 2705, "[a] person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 'Serious bodily injury' is defined as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ." *Commonwealth*

8

*v. Hopkins*, 747 A.2d at 915 (citing 18 Pa. C.S. § 2301). It is well settled that to sustain a conviction for recklessly endangering another person, the Commonwealth is required to prove that the defendant had an actual present ability to inflict harm. *Id.* at 916. The *mens rea* for recklessly endangering another person requires "a conscious disregard of a known risk of death or great bodily harm to another person." *Commonwealth v. Peer*, 684 A.2d 1077, 1080 (Pa. Super. Ct. 1996). Defendant's claim that "simply pointing a lawfully owned and possessed gun in his home at Tracy Thomson did not amount to reckless conduct that placed someone in danger of death or serious bodily injury," is factually and legally inconsistent. Factually, Defendant fails to accurately characterize the highly charged and emotionally unstable atmosphere in which the underlying episode occurred. More specifically, he neglects to clarify that his weapon was loaded; he was acting in the midst of a frustration-fueled fit which had begun some time earlier that evening when he violently physically assaulted the mother of his child by dragging her down the stairs by her hair; and he had been drinking alcohol while brandishing his loaded weapon. With those complete facts, Defendant's legal assertion clearly fails.

In *Commonwealth v. Hopkins*, the Court held that the fact that defendant was visibly in possession of a gun which was loaded and operable throughout the underlying incident supported the trial court's verdict against him for recklessly endangering another person. *Id.* at 916. In *Commonwealth v. Peer*, the Court held that brandishing a loaded firearm during the commission of a crime, after consuming alcohol, set forth a sufficient basis on which a fact-finder could find both that a defendant proceeded with conscious disregard for the safety of other, and that he had the present ability to inflict great bodily harm or death. *Id.* at 1080-81. Similarly, in *Commonwealth v. Rivera*, the Court held that "knowingly pointing a loaded weapon at another person may be sufficient to convict a defendant for reckless endangerment." *Id.* 597 A.2d 690, 695 (Pa. Super. Ct. 1991).

9

Likewise, in this case, Ms. Thomson's testimony that Defendant, on whom she detected the smell of alcohol, recklessly pointed his loaded handgun to her head as she knelt, defenseless, on the floor of her daughter's bedroom, rushing to throw a handful of her clothing into her backpack adequately demonstrated he had the requisite present ability to inflict serious bodily harm upon her, as well as, the conscious disregard that his weapon could discharge, seriously injuring or killing Ms. Thomson.

Moreover, similar to the Court in *Peer*, where defendant asserted that his firearm safety training essentially rendered his loaded weapon harmless, this Court cannot countenance Defendant's instant justification that his lawful possession of his loaded weapon in his home negated the recklessness of his conduct in pointing it inches from Ms. Thomson's head. *See Peer*, at 1080-81.

In light of the ample credible testimony and evidence set forth by the Commonwealth, the Court appropriately determined that Defendant recklessly endangered Ms. Thomson when he pointed a loaded firearm inches from her head while verbally threatening her. As such, Defendant's sufficiently claim is meritless.

## B. The Court Properly Precluded Defendant From Cross Examining Ms. Thomson Regarding Her Alleged Past Mental Health History And Medical Treatment Without Any Properly Articulated Basis.

Next, Defendant claims that the Court erred when it denied him the ability to cross examine Ms. Thomson "regarding both her past mental health history and drug use," for depression and/or bipolar disorder.[7] Defendant further contends that such cross-examination was relevant to reveal Ms. Thomson's alleged motive and bias against Defendant. Having failed, however, to adequately develop the record, this claim is waived. In the alternative, the Court

---

[7] [*See* Def.'s 1925(b), at ¶ 2; N.T. 1/18/18, at 174].

10

properly excluded the alleged proffered evidence where Defendant failed to demonstrate its relevance.

To preserve a claim of error in a ruling to exclude evidence, such as that claimed here, a party must assert either assert a timely objection, specifying its ground or provide the Court with an offer of proof . . . ." Pa. R.E. 103(a)(1)-(2). With regard to challenges to the admissibility of evidence, our Courts have applied the following rubric:

> Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and a reviewing court will not reverse the trial court's decision absent a clear abuse of discretion. Abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Commonwealth v. Young*, 989 A.2d 920, 924 (Pa. Super. Ct. 2010). "Relevance is the threshold for admissibility of evidence." *Commonwealth v. Tyson*, 119 A.3d 353, 358 (Pa. Super. Ct. 2015); *see also* Pa. R.E. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa. R.E. 401; *see Tyson*, 119 A.3d at 358 ( "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact."). Pursuant to Pa. R.E. 403, "[t]he Court may exclude relevant evidence if its probative value is outweighed by the danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

Before the Commonwealth's case-in-chief, the parties brought certain evidentiary issues to the Court's attention. At the parties' request, the Court conducted an off-the-record conference to address the parties' concerns, and when proceedings were reconvened, the following was made part of the record:

11

THE COURT: All right. Let's see if we can summarize the argument that I heard off the record in conference.

So there are two issues that were raised. One had to do with the victim's taking a medication and mental health treatment. I guess to summarize the argument by Mr. DiPippo, he proposes to question the victim on her – on the medications that she takes and her mental health treatment, for purposes of attacking her credibility. The evidence in that regard that he proposed was strictly to elicit evidence, based on cross-examination of the victim. And effectively ask the Court to take recognition of the impact of those medications, taking them or not taking them, without any other medical supporting evidence of any kind, or expert testimony of any kind, or any reports of any kind. And I've indicated I will grant the Commonwealth's motion to exclude that line of questioning in that regard.

Certainly, as with anything else, should something open up and you want to address that, Mr. DiPippo, that somehow that's been opened up by the Commonwealth in some way, I will address it at that point.

Did that adequately summarize that argument?

THE COMMONWEALTH: Yes, Your Honor.

DEFENSE COUNSEL: Yes, Your Honor.

[N.T. 1/18/18, at 6-7].

Preliminarily, Defendant frames the instant issue as one involving Ms. Thomson's alleged bias and motive, contrary to his prior characterization at trial as one involving her credibility.[8] *Commonwealth v. Tomasso*, 457 A.2d 514, 515 (Pa. Super. Ct. 1983), *aff'd*, 485 A.2d 395 (Pa. 1984) ("Failure to so preserve the distinct grounds for an issue deprives the trial court of the opportunity to make a fully informed evaluation of the issue.") Thus, in the first instance, Defendant failed to assert his instant bias and/or motive rationale at trial, thereby, failing to preserve the same for appellate review.[9]

---

[8] [*See e.g.*, Pa. R.E. 601(b) (Addressing competency to testify and mental health), *compare*, Pa. R.E. 607 (Addressing impeachment and credibility)].

[9] The record reflects that Defense Counsel agreed unequivocally with the Court's characterization of his evidentiary argument which related only to Ms. Thomson's credibility; as opposed to the bias and motive contentions asserted for the first time on appeal. See PA. R.A.P. 903

12

Putting aside Defendant's objective waiver, and post facto revisionist characterization of the claim, he failed to adequately develop the record in terms of substantiating his legal reasoning and evidentiary basis for seeking to cross examine Ms. Thomson regarding her alleged mental health, and/or her prescribed medication to address such issues. The only statement of record that Defendant even sought to introduce the proffered evidence is set forth in its entirety above. Defense counsel's sole proffer was to cross examine Ms. Thomson based on information from Defendant that Ms. Thomson suffered from mental health issues for which she was treated. As the Court noted on the record, Defendant had no reports, expert testimony, or any other evidence to lend credence, let alone substantiate, a finding that Ms. Thomson's "mental health condition" and/or medication, affected her credibility in any respect whatsoever. *But see Commonwealth v. Davis*, 674 A.2d 214, 216 (Pa. 1996) (Therapist's diagnosis of victim as a "pathological liar" was relevant and admissible to impeach victim's credibility.) As presented by defense at trial, his attempt to cross examine the victim in this case was nothing more than a fishing expedition intended to create impermissible bias as to Ms. Thomson, while simultaneously subjecting her to embarrassment. Moreover, Defendant failed both to make an offer of proof, beyond proposing to cross examine Ms. Thomson in this regard, or clarify the issue for the Court and/or appellate review. Without offering some supporting contextual evidence, the fact that Ms. Thomson had a past mental health history and/or corresponding medical treatment is meaningless. Having baldy claimed, without any ratiocination, that his line of inquiry was intended to undermine Ms. Thomson's credibility, Defendant neglected to adequately develop the record.

Defendant's implicit bald assertion that Ms. Thomson was either not credible, and/or biased, and/or had ulterior motives, is simply not substantiated by his allegation that she received mental health treatment and/or took medications prescribed as part of that treatment. Contrary to

13

Defendant's claim, such evidence does not, in and of itself, logically tend to establish that Ms. Thomson was not credible, biased, and/or had ulterior motives. *See* Pa. R.E. 403. Given Defendant's failure to establish the relevance of the proffered evidence, the Court properly precluded Defendant from cross-examining Ms. Thomson on these issues. Moreover, even if Defendant had met his relevance burden, the Court had discretion to exclude that evidence on the basis that it would unfairly prejudice the victim, confuse the issues, create undue delay, and/or waste time. *See* Pa. R.E. 403.

Finally, even without delving into Ms. Thomson's alleged mental health history and related medical treatment, the record in this case contained ample evidence of each party's potential ulterior motives and biases. Given the ample, undisputed testimony presented by both parties regarding the acrimonious and volatile nature of the parties' relationship and lengthy custody battle over their daughter, the Court was well aware of the parties' biases and motivations. Much, if not all, of the Commonwealth's case-in-chief focused on the parties' tenuous relationship and the ripple effects on the custody status of their daughter. The evidence at trial revealed that each parent's priority was primary custody and contact with their daughter. In addition, the Commonwealth introduced and admitted evidence that Ms. Thomson's desire to spend time with her daughter had even, at times, apparently clouded her judgment, resulting in her being held in contempt for kidnapping her daughter.[10] As such, the record already aptly reflected each party's potential underlying biases and motivations in this case even without Defendant's alleged impeachment evidence.

Based on Defendant's failure to meet his burden to establish Ms. Thomson's alleged mental health history was relevant, the Court properly precluded his cross-examination on the issue.

---

[10] [N.T. 1/18/18, at 181].

14

## C.    The Court Properly Applied The Deadly Weapon Enhancement.

Finally, Defendant asserts that the Court's improperly imposed the DWE (used) sentencing enhancement on the charge of Recklessly Endangering Another Person, "when the actual weapon being used was the basis for the guilty verdict of the crime."[11] Contrary to Defendant's assertion, however, the Court's imposition of the DWE (used) was not only proper, but required statutorily. As such, Defendant's final claim fails.

It is well-settled that "[s]entencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." *Commonwealth v. Raybuck*, 915 A.2d 125, 128 (Pa. Super. Ct. 2006)(internal quotation omitted). Title 18 Section 2301 defines 'deadly weapon' as "[a]ny firearm, whether loaded or unloaded, or any device designed as a weapon and capable of producing death or serious bodily injury, or any other device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury." Pursuant to 204 Pa. Code § 303.10(a)(2)(i):

> When the court determines that the offender used a deadly weapon during the commission of the current conviction offense, the court shall consider the DWE/Used Matrix (§ 303.17(b)). An offender has used a deadly weapon if any of the following were employed by the offender in a way that threatened or injured another individual:
>
> > (i) Any firearm, (as defined in 42 Pa. C.S. § 9712) whether loaded or unloaded, or

While Defendant failed to articulate upon what legal and/or statutory authority he relies in asserting this particular allegation of error, the case law interpreting the Legislature's DWE (used) sentencing guidelines deny the Court any discretion, whatsoever, in applying the enhancement in the present context, where the fact finder determined Defendant used a deadly

---

[11] [*See* Def.'s 1925(b), at ¶ 3].

15

weapon during the commission of an underlying offense. *See* 204 Pa. Code § 303.10(a)(2) (referencing 204 Pa. Code § 303.17(b)). The sentencing court has no discretion to refuse to apply the deadly weapons enhancement when it is appropriate." *Raybuck*, 915 A.2d at 129 (internal quotation omitted). Guided by the precepts set forth above, the Court correctly determined that Defendant's actions in pointing his loaded handgun to Ms. Thomson's head triggered imposition of the DWE (used) sentencing enhancement.

While not clear, Defendant seems to argue that he has been unfairly and/or doubly penalized for pointing a loaded gun at the victim's head in a menacing and raged-fueled fit. The instant circumstances, however, are no doubt the type contemplated and for which the DWE (used) enhancements were drafted, as Defendant's use of a loaded gun here drastically raised the mortal stakes for both he and his victim in this case. Moreover, while not explicitly referenced, if Defendant is attempting to argue that the use of the deadly weapon was an element of the crime at issue, he is misguided. Glaringly absent from the elemental enumeration of the crime of Recklessly Endangering Another Person, is any mention of "possession of a deadly weapon." 204 Pa. Code § 303.10(a)(3)(ix). (Title 18, Section 2705, "[a] person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." ) As such, the limited exception, set forth in 204 Pa. Code § 303.10(a)(3)(ix), which prohibits imposition of the DWE for any offense "for which possession of a deadly weapon is an element of the statutory definition," has no application to the case *sub judice*.

Defendant's rationale for contesting the DWE enhancement, at least as articulated at his Sentencing Hearing, relied upon his subjective perspective that the underlying circumstances did

16

not rise to the level of violence to merit enhanced penalties.[12] Defendant's characterization, however, wherein he claimed that his weapon was "only very remotely involved," is belied by the record and no doubt vigorously contested by his victim who found herself on her knees looking up the barrel of a loaded gun.[13] The record in this case amply reflects the violence, requisite recklessness, and tremendous potential for serious injury, if not death. As such, the Court's imposition of the DWE (used) was entirely appropriate. As such, Defendant's third issue on appeal is deemed meritless.

## IV. CONCLUSION

Accordingly, the trial court requests that the judgment of sentence imposed on Defendant, Joseph A. Micucci, on April 11, 2018, be AFFIRMED.

BY THE COURT:

THOMAS C. BRANCA,                    J.

Copies of the above Opinion
Mailed on: 8/9 /18
**By First Class Mail:**
Gregory P. DiPippo, Esquire
**By Interoffice Mail:**
Montgomery County District Attorney - Appellate Division
Deputy Court Administrator-Criminal

Secretary

---

[12] [N.T.4/11/18, at 21-22].
[13] [N.T. 4/11/18, at 21].

17